8981

## PADGETT v. SEABOARD AIR LINE RY.

(83 S. E. 633.)

MASTER AND SERVANT. FEDERAL EMPLOYERS' LIABILITY ACT. CIRCUM-
STANTIAL EVIDENCE. ISSUE FOR JURY. SAFE PLACE TO WORK. NEG-
LIGENCE. CHARGE.

1. In an action under the Federal Employers' Liability Act (act April
22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. 1913, sec. 8657]), for the
death of a railroad engineer, who was killed by falling into a round-
house pit, in which the issues were whether he went into the round-
house in the course of his employment or for purposes of his own,
whether the company was negligent, and whether deceased assumed
the risk, plaintiff *held* entitled to recover.

2. In an action under the Federal Employers' Liability Act for the
death of an engineer by falling into a roundhouse pit, plaintiff can-
not recover if the engineer went into the roundhouse for purposes
of his own, or if there is a failure of evidence from which it can be
inferred that he went there for the purposes of his employment;
since plaintiff must show that deceased was engaged in interstate
commerce at the time of his death.

3. Whether the failure of a railroad company to light a roundhouse,
into which employees were called to go, other than furnishing torches,
was negligence, was for the jury.

4. Where an engineer's usual duties did not require him to go into the
roundhouse where his engine was standing, and no testimony tend-
ing to show that he knew of an open pit therein or the danger of
such pits in such houses, where some employees were required, and
others might have occasion to go, he cannot be held to have assumed
the risk arising from such pits.

5. Charging inconsistent propositions of law is not reversible error,
unless the jury may have been thereby misled to the appellant's
injury.

6. Instructions applicable to different hypothetical statements of fact
are not inconsistent.

7. An instruction at appellant's request applicable to a state of facts,
not shown by, or inferable from, the testimony, does not form the
basis of exception by appellant.

Before SPAIN, J., Lexington, February, 1914.    Affirmed.

Action by Clara V. Padgett, as administratrix of the
estate of Lewis H. Padgett, deceased, against Seaboard Air
Line Railway. From a judgment for plaintiff, defendant
appeals. The facts are stated in the opinion.

The exception to the charge on the defense of assumption of risks was as follows:

XII. That his Honor erred in charging plaintiff's requests, numbered six and eleven, as follows:

"6. The servant by virtue of his employment assumes all the ordinary risks and hazards of his employment, and as this case is governed by the Federal Employers' Liability Act, which relates to common carriers or railroads engaged in interstate commerce, the servant does not assume the risks or hazards incident to the negligence of any of the officers, agents or employees of any such common carrier."

"11. In a case where the relationship of master and servant exists, the servant owes certain duties to the master and the master owes certain duties to the servant. The servant assumes all of the ordinary risks incident to his employment, but he does not assume an extraordinary risk incident to such employment. He does not assume the risks arising from the negligence of the master. The master is required under the law to furnish the servant a reasonably

FOOTNOTE.—This case being carried on writ of error to the United States Supreme Court, the decision of the State Court was affirmed, see 236, U. S. 638, 35 Sup. Ct. Rep. 481, as follows:

SEABOARD AIR LINE RAILWAY, PLAINTIFF IN ERROR, v. CLARA V. PADGETT, ADMINISTRATRIX OF THE ESTATE OF LEWIS H. PADGETT, DECEASED.

1. ERROR TO THE STATE COURT—SCOPE OF REVIEW—NONFEDERAL QUESTIONS.—The Federal Supreme Court, when reviewing a judgment of a State Court in an action in which the right to recover was based upon the Federal Employers' Liability Act of April 22, 1908 (35 Stat. at L. 65, chap. 149, Comp. Stat. 1913, sec. 8657), cannot consider merely incidental questions not in Federal character, i. e., those which do not in their essence involve the existence of the right in the plaintiff to recover under the Federal statute to which his recourse by the pleadings was exclusively confined, or the converse, the right of the defendant to be shielded from responsibility under that statute, because, when properly applied, no liability on his part from the statute would result.

2. ERROR TO STATE COURT—FRIVOLOUS FEDERAL QUESTION.—The contention in a suit in a State Court based upon the Federal Employers' Liability Act of April 22, 1908 (35 Stat. at L. 65, chap. 149, Comp.

safe place, instrumentalities, machinery, tools, and the like, with which, in which, and by which he is to perform his duties as a servant. If the master fails to do this and injury results as the direct and proximate cause of such failure, the master would be liable in damages to the servant so injured."

The error being:

(a) That according to the rule of assumption of risks applicable under the Federal Employers' Liability Act, the servant does assume the risks or hazards incident to the negligence of the officers, agents or employees of the common carrier employed under certain circumstances, and in the case at bar, if plaintiff's intestate knew, or if having a reasonable opportunity to inform himself, he ought to have known, as a man of ordinary intelligence, of the alleged defects in the roundhouse; that is, that it was unlighted, incomplete, and contained dangerous pits, all of which and the risks and dangers thereof being obvious to the senses, and yet he voluntarily remained in the service without complaint, objection or promise to him to correct, and exposed

Stat. 1913, sec. 8657), that the jury was misled concerning the doctrine of assumption of risk by two statements by the Court, which, standing alone, may be confusing, may have sufficient strength to serve as the basis of a writ of error from the Federal Supreme Court, although that Court may agree with the State Court in thinking that the statements in question could not have produced a mistaken conception in the minds of the jury, when considered with the express instructions concerning the doctrine of assumption of risk as applied to the case at bar.

3. TRIAL—MISLEADING INSTRUCTIONS.—Whether instructions could have produced misconception in the minds of the jury is not to be ascertained by merely considering isolated statements, but by taking into view all the instructions given, and the tendencies of the proof in the case to which they could possibly be applied.

4. ERROR TO STATE COURT—FRIVOLOUS FEDERAL QUESTION.—The Federal question presented by the contention that error was committed by the State trial Court in not taking from the jury a case based upon the Federal Employers' Liability Act of April 22, 1908 (35 Stat. at L. 65, chap. 149, Comp. Stat. 1913, sec. 8657), and in not instructing the jury to render a verdict for the defendant, upon the assumption that there was no evidence sufficient to justify the submission

himself thereto, then he waived the duty owed him by his master to this extent and assumed the risks of such defects, notwithstanding that they may have been due to the negligence of defendant. And his Honor, in charging these requests, deprived defendant of this defense which the evidence strongly, if not conclusively, established.

(b) The said requests, together with his Honor's comments thereon, were inconsistent with, and repugnant to, defendant's request numbered eight and one-half, as follows:

"8½. If Padgett, before the injury, had knowledge of the alleged defects in the roundhouse, or, if having a reasonable opportunity to inform himself, he ought to have known of such defects, he is presumed, by remaining in the company's service, to have assumed the risks. if he voluntarily exposed himself to the dangers of such defects, and his beneficiaries cannot recover for his injury or death resulting therefrom, and his knowledge has the same effect, whether the defendant was informed or ignorant of such

of the case to the jury for its consideration, manifestly cannot be said to be so frivolous as not to serve as the basis of a writ of error from the Federal Supreme Court, where the highest State Court was divided on the question, and some members of the Federal Supreme Court consider that the proposition affords adequate ground for reversal.

(Argued February 24, 1915. Decided March 22, 1915.)

In error to the Supreme Court of the State of South Carolina to review a judgment which affirmed a judgment of the Court of Common Pleas for Lexington county, in that State, in favor of plaintiff in an action based on the Federal Employers' Liability Act. Affirmed.

See same case as below, 99 S. C. 364, 83 S. E. 633, *supra.*

Mr. J. B. S. Lyles for plaintiff in error.

Messrs. W. Boyd Evans, James H. Fanning, W. H. Sharpe, and A. D. Martin for defendant in error.

Mr. Chief Justice White delivered the opinion of the Court:

Is there jurisdiction to review the action of the Court below in affirming the judgment of the trial Court, which was entered on the verdict of a jury, and if so, was error below committed, are the questions for decision (99 S. C. 364, 83 S. E. 633).

defects. This rule applies with special force if the defects or dangers were obvious to the senses." And by charging these inconsistent and irreconcilable propositions upon this fundamental and material issue his Honor misled and confused the jury and deprived defendant of its right to have the jury consider the evidence tending to establish this defense under proper instructions."

*Messrs. C. M. Efird* and *Lyles & Lyles,* for appellant, submit: *Padgett did not come to his death while engaged in interstate commerce:* 223 U. S. 1; 56 L. Ed. 327; 225 U. S. 477; 56 L. Ed. 1171; *Ill. Central R. Co.* v. *Behrens,* U. S. Sup. Ct. No. 241, April 27, 1914. *Plaintiff bound by construction of complaint acquiesced in by him:* 16 S. C. 14. *Padgett was not in the roundhouse in performance of any duty imposed upon him as a locomotive engineer:* 3 Elliott on Railroads (2d ed.), sec. 1303; *S. A. L. Ry.* v. *Horton,* U. S. Sup. Ct., Apl. 27, 1914; 104 Fed. 119; 44 C. C. A. 484; 155 Fed. 22; 83 C. C. A. 618; 144 Fed. 806; 75 C. C.

The suit was brought to recover damages alleged to have been suffered by the death of Lewis H. Padgett, a railroad engineer in the service of the defendant company, the plaintiff in error, caused by his having fallen during the early morning hours into a drop pit in a locomotive roundhouse belonging to the company. The negligence charged was not only the failure to cover the pit, but also to properly light the roundhouse. If our jurisdiction attaches, it can only be because the right to recover was based upon the act of Congress commonly known as the Employers' Liability Act, it having been averred that the deceased was an employee of the company, actually engaged in interstate commerce. But, as pointed out in *St. Louis, I. M. & S. R. Co.* v. *McWhirter,* 229 U. S. 265, 275, 57 L. Ed. 1179, 1185, 33 Sup. Ct. Rep. 858, although the cause of action relied upon was based upon the Federal statute, nevertheless, "as it comes here from a State Court, our power to review is controlled by Rev. Stat., sec 709 [sec. 237, Judicial Code (36 Stat. at L. 1156, chap. 231, Comp. Stat. 1913, sec. 1214)], and we may therefore not consider merely incidental questions not Federal in character; that is, which do not in their essence involve the existence of the right in the plaintiff to recover under the Federal statute to which his recourse by the pleadings was exclusively confined, or the converse; that is to say, the right of the defendant to be shielded from responsibility under that statute, because, when properly applied, no liability on his part from the

A. 536; Law Reports 1904, 1 K. B. 242; *N. C. R. R. Co.* v. *Zachary,* U. S. Sup. Ct., Feb. 2, 1914; 231 U. S. 112-119; 34 Sup. Ct. 26; 223 U. S. 48; 56 L. Ed. 345. *Federal rule as to submission of issues to jury:* 179 U. S. 658; 45 L. Ed. 651. *Plaintiff* can *recover only by proving the delicts alleged in complaint:* 33 S. C. 198; 45 S. C. 278; 55 S. C. 489; 57 S. C. 435; 76 S. C. 557; 89 S. C. 378. *Verdicts cannot rest on mere surmise:* 81 S. C. 31. *No inference can be drawn from the evidence that Padgett was within the relation of master and servant at time of his death:* 112 Ga. 237; 37 S. E. 439; 96 Ga. 769; 22 S. E. 273; 69 N. H. 634; 41 Atl. 268; 90 Tenn. 546; 18 S. W. 255; 4 Tex. Civ. App. 661; 23 S. W. 1001; 52 Iowa 329; 35 Am. Rep. 275. *Error to refuse new trial:* 16 S. C. 14. *No evidence to show negligence on part of defendant proximately causing the death of plaintiff's intestate; safe place:* S. A. L. Ry. v. *Horton, supra,* also 179 U. S. 658; 45 L. Ed. 651; 72 S. C. 398; 82 S. C. 542; 59 S. C. 535. *Assumption of risk: S. A. L. Ry.* v. *Horton, supra. Inconsistent instructions:* 11 Enc. Pl. & Prac. 145-149.

statute would result. *Seaboard Air Line R. Co.* v. *Duvall,* 225 U. S. 477, 56 L. Ed. 1171, 32 Sup. Ct. Rep. 790; *St. Louis, I. M. & S. R. Co.* v. *Taylor,* 210 U. S. 281, 52 L. Ed. 1061, 28 Sup. Ct. Rep. 616, 21 Am. Neg. Rep. 464." The existence of jurisdiction to review under the principles just stated depends not merely upon form, but upon substance; that is, in this class of cases, as in others, the general rule controls that power to review cannot arise from the mere assertion of a formal right when such asserted right is so wanting in foundation and unsubstantial as to be devoid of all merit and frivolous. There is no doubt that the assignments of error on their face embrace Federal questions which give jurisdiction to review. We, therefore, exercise jurisdiction and come to consider the questions on their merits, incidentally pointing out in doing so the reasons why the questions are not of such a frivolous character as not to afford a basis for the authority to examine and dispose of them. The trial Court gave to the jury every instruction concerning the meaning and application of the act of Congress asked by the company, and, therefore, there is no ground whatever for saying that the view of the statute relied upon by the company was not given to the jury. But, despite this fact, two of the nine assignments of error insist that the jury was misled concerning the doctrine of assumption of the risk applicable under the statute because of two statements as

*Messrs. W. Boyd Evans, Thurmond, Timmerman & Callison, W. H. Sharpe, Melton & Sturkie, James H. Fanning* and *A. D. Martin,* for respondent.

*Mr. Evans* cites: *As to employment in interstate commerce: N. C. Ry. Co.* v. *Zachary,* U. S. Sup. Ct., filed March 1, 1914; also 231 U. S. 112, 119; 34 Sup. Ct. Rep. 26; 196 Fed. 336-338; 116 C. C. A. 156; Richey Fed. Em. Liability Act, pp. 78, 79. *Assumption of risks: S. A. L. Ry.* v. *Horton,* U. S. Sup. Ct., Apl. 27, 1914.

November 18, 1914.

The opinion of the Court was delivered by Mr. Justice Fraser.

Lewis H. Padgett was an engineer on the Seaboard Air Line Railway. He had been running a freight train, but in the first part of January, 1913, he was promoted to the passenger service, and was given a run between Columbia, S. C., and Savannah, Ga., and so was engaged in interstate com-

to the law on the subject, made by the Court to the jury over the exception of the defendant, which are asserted to have been confusing because possibly conflicting with each other. But while the proposition has sufficient strength to exclude the conception that the contention is frivolous, we are nevertheless of opinion that the Court below was right in holding that even upon the concession, for argument's sake, that the two charges referred to, if they had stood alone, might have tended to give to the jury a mistaken conception of the law of assumption of the risk, nevertheless there was no reason for saying that they could have produced such a result in view of the express instruction concerning the doctrine of assumption of the risk as applied to the case in hand which was given by the Court to the jury in the very words asked by the company, and which was so explicit as to dispel the possibility of misconception. Whether the instructions could have produced misconception in the minds of the jury is not to be ascertained by merely considering isolated statements, but by taking into view all the instructions given and the tendencies of the proof in the case to which they could possibly be applied. And as from both of these points of view we are of the opinion that there is no room whatever for the conclusion that any confusion or misconception as to the doctrine of assumption of the risk could have arisen from the particular statements which are relied upon, the proposition based upon them is without merit.

merce.    When the train reached Columbia, the engine was
detached and carried to the yard at Cayce, a station near
Columbia.    The engineer ran his engine into the yard near
the roundhouse and left it upon a siding in the yard.    He
left his engine about 10:30 p. m., on the 11th day of Janu-
ary, 1913.    Mr. Padgett's regular run would have required
him to leave Columbia at 6:10 a. m. on the morning of the
12th.    He was detained in the yard for a while so that he
might take out another train, if necessary.    It was not neces-
sary and he was notified that he would make his regular run.
The company had built a small boarding house at Cayce for
the convenience of its trainmen, but let out the management
of the house to a private party.    When Mr. Padgett was
notified that he would be required to make his regular run
he went to the boarding house and found it full.    He then
went back on the yard, into the roundhouse and into an
engine and went to sleep.    At about 4:30 o'clock on the
morning of the 12th the engine in which Mr. Padgett was

While this disposes of the two assignments which are directly and
specifically concerned with the interpretation of the statute, nevertheless
the remaining seven also raise questions of law under the statute, since
they all, in one form or another, rest upon the contention that error was
committed by the trial Court in not taking the case from the jury and
instructing a verdict for the defendant upon the assumption that there
was no evidence sufficient to justify the submission of the case to the
jury for its consideration.    *Creswill* v. *Grand Lodge, K. P.,* 225 U. S.
246, 261, 56 L. Ed. 1074, 1080, 32 Sup. Ct. Rep. 822; *Southern P. Co.* v.
*Schuyler,* 227 U. S. 601, 611, 57 L. Ed. 662, 669, 43 L. R. A. (N. S.) 901,
33 Sup. Ct. Rep. 277; *St. Louis, I. M. & S. R. Co.* v. *McWhirter,* 229 U.
S. 276, 277, 57 L. Ed. 1186, 33 Sup. Ct. Rep. 858; *Miedreich* v. *Lauen-
stein,* 232 U. S. 236, 243, 244, 58 L. Ed. 584, 589, 590, 34 Sup. Ct. Rep.
309; *Carlson* v. *Washington,* 234 U. S. 103, 106, 58 L. Ed. 1237, 1238, 34
Sup. Ct. Rep. 717.    Considering the case from this point of view we
think the contention cannot be said to be frivolous, since its solution is
by no means free from difficulty,—a situation which was manifested by
the division of opinion which rose on the subject in the Court below, and
by the further fact that some members of this Court now consider the
proposition as affording adequate ground for reversal.    But although
the question is not free from complexity, a majority of the Court is of
opinion that the proof was sufficient to justify the submission of
the case to the jury, and therefore the proposition affords no basis for

asleep was run out of the roundhouse down to the coal chute,
to be supplied with coal, water, etc., for its trip.    At the
coal chute Mr. Padgett waked and got off the engine.    He
inquired where his engine was and was told it was in the
roundhouse on track No. 3.    The last seen of Mr. Padgett
alive, he was going in the direction of the roundhouse.
When it came time to call him he could not be found, and
the engine went off without him.    A little later he was
found in an open, uncovered pit in the roundhouse dead.
His engine had been standing with the step over the pit.
The pit was a little over eight feet deep.    There were no
lights in the roundhouse.

Suit was brought in the behalf of his widow and depend-
ent children for negligence under the Federal Employers'
Liability Act.    The defendant answered denying negligence.
It denied that the deceased was engaged in interstate com-
merce at the time of his death.    It pleaded that the deceased
was a trespasser in the roundhouse, contributory negligence

---

holding that reversible error was committed because that course was
pursued.    As the considerations by which this conclusion is sustained
depend solely upon an analysis of the evidence, and as a statement upon
the subject, therefore, would amount only to giving a summary of the
proof in this case and its tendencies involving no matter of doctrinal
importance, for this reason and additionally in view of the fact that
both Courts below have concurred in holding that there was no suffi-
cient ground to take the case from the jury, we think it is unnecessary
to state the proof and its tendencies, and we therefore content ourselves
with saying that the contention that error was committed in not taking
the case from the jury is found, after an examination of the record, to
be without merit.

In the argument a contention was urged based upon some expression
made use of by the trial Court in refusing the request to take the case
from the jury.    Although we have considered the proposition and find
it totally devoid of merit, we do not stop to further state the conten-
tion or the reasons which control us concerning it as we think it is mani-
festly an afterthought, as it was virtually not raised in the trial Court.
and was not included in the assignments of error made for the purpose
of review by the Court below, nor in those made in this Court on the
suing out of the writing of error.

Affirmed.

and assumption of risk.   The judgment was for the plain-
tiff, and the defendant appealed on numerous exceptions, but
argues three propositions.

1, 2
"Padgett did not come to his death while employed
in interstate commerce."

The defendant claimed that the rules required the
engineer to leave his engine in the yard, that he was then to
go into the machinery room and "write off" and leave a
memorandum as to repairs.   That he had no duty that
called him into the roundhouse.   That a "hostler" then took
charge of the engine, and if any repairs were to be made the
hostler took it into the roundhouse where the machinists
made the repairs and the hostler went to the roundhouse for
the engine, took it out and carried it off for coal, water, etc.,
and put it back on the sidetrack.   That the engineer then
inspected it and if it was found to be in proper condition he
took charge of it and went out on his run.   That Mr. Pad-
gett ended his service at 10:30 o'clock on the night of the
11th, and was not required to go to work until about 5:30
on the morning of the 12th, and he was killed between those
hours, hence he was not engaged in the service of the rail-
way when killed.

The defendant asked for a direction of verdict on the
ground that there was no evidence that the ·deceased was
engaged in interstate commerce at the time of his death.
This was refused.   The exact question is, for what purpose
did Padgett go into the roundhouse?   If he went there for
any purpose of his own, or there is an utter failure of evi-
dence to prove any circumstances from which his purpose
can be inferred, then the verdict ought to have been directed.

There was evidence to show that when the engine came
into the yard that night, it had a hot box and needed repair.
That the rule required the engineer to inspect his engine only
about a half hour before the leaving time.   There was no
intimation that he was forbidden to inspect it before.   There
was evidence that if the inspection was made at the required

hour and it was found that the repairs had not been made or improperly made, then the engine would have to be returned to the roundhouse to have the repairs properly made. That the repairs would take time and the time necessary would have to be taken even if it delayed the departure of his train. The evidence is circumstantial, but conclusions may be drawn from circumstances. On the trial appellant took the position that the purpose must be inferred from the circumstances.

The plaintiff offered to prove Mr. Padgett's declaration, but, on appellant's motion, the statements were·ruled out, because his Honor said the purpose must be inferred from circumstances. In this ruling the appellant acquiesced, and of it there is no complaint. So the question is, are there circumstances from which his purpose can be inferred? It is not altogether fair to try a case on one theory and dismiss it on another. Mr. Padgett had recently been promoted to a passenger run. Repairs had to be made. He was already awake and dressed a few minutes before he was to be called. He was on the yard with his personal preparations made. He asked where his engine was placed and was told by the hostler in charge that it was on track No. 3 in the round-house, and started in that direction. Of course, he had the right, under the rules, to loaf around until the exact minute that the rule required him to take his engine, and if error had occurred in the mechanical department, he had the right to send his engine back and delay the train and say to his superiors, the rule does not require any more and I am not going to do any more than the strict rule requires. Would a faithful servant be likely to do that? That was question for the jury. Would a man recently promoted stand upon the strict letter of the rule? That was a question for the jury. There is a suggestion that Mr. Padgett went to his engine to sleep. The time at his disposal was short. He did not leave in the office a note as to where he could be found. He went to sleep on an engine that left earlier than

he was required to be called.   He was found and waked
early.   The saying, "the engines belong to the company, but
the runs belong to the men," is much relied upon to show
that engines might be changed.   The statement, however, is
made that while a change could be made, yet the general
practice was to allow the use of the same engine.   The jury
were told of the time that would elapse between the time
Mr. Padgett was waked and the time of his regular call.
Was it probable that he could use that time in sleep or in
inspecting the engine to see that there was no unnecessary
delay in doing his work?   These were questions for the
jury.

If they inferred from the circumstances that Mr. Padgett
was doing the work that was required of him, not at the
time it was required, but at a time when it was not forbid-
den, then they could conclude that he was engaged in inter-
state commerce, and under the protection of the Federal
statute his Honor could not have directed a verdict on the
ground that there was no evidence from which it could be
inferred that Mr. Padgett was engaged at the time of his
death in interstate commerce.

> "No evidence tending to show negligence on the
> part of the defendant proximately causing the death
> of plaintiff's intestate."

There was an open pit over eight feet deep in the
unlighted roundhouse.   The step of this engine was over
the open pit.   "Hostlers" and their helpers were required
to go in and get on this engine over the pit.   The only
lights available were torches.   Mr. Padgett's unlighted torch
was in his engine.   Was this negligence?   It was a question
for the jury.

> Did Mr. Padgett assume the risk?   In *Seaboard*
> *Air Line Railway* v. *Horton,* 233 U. S. 492, 34 Sup.
> Ct. 635, that Court says:

"Such dangers as are normally and necessary incident
to the occupation are presumably taken into account in fix-

ing the rate of wages, and a workman of mature years is taken to assume risks of this sort, whether he is actually aware of them or not. But risk of another sort not naturally incident to the occupation, may arise out of the failure of the employer to exercise due care with respect to providing a safe place of work and suitable and safe appliances for the work. These the employee is not treated as assuming until he becomes aware of the defect or disrepair and of the risk arising from it, unless defect and risk alike are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them."

Mr. Padgett's run brought him into Cayce at night and he left early in the morning. His usual duties did not require him to go, and there is no reasonable inference from the testimony that he knew of the open pit or of the danger of open pits in roundhouses where some men were required to go and others might have occasion to go.

Appellant further says that the charge was inconsistent in that the plaintiff's 6th and 11th requests to charge were inconsistent with the defendant's 8½ and his Honor charged the three. The rule that a Judge shall not charge inconsistent propositions is a good one, but that it is always reversible error, is not true. It must appear that the jury may have been misled to appellant's injury. The 6th and 11th requests of the plaintiff were based upon a finding of negligence by the jury. When his Honor charged appellant's request numbered 8½, he left it to the jury to say whether Mr. Padgett knew or ought to have known of the open pit. There was no word of testimony to show that Mr. Padgett knew or ought to have known of the open pit. If his Honor erred, it was in favor of the appellant, and it can not complain of an error favorable to itself.

Judgment affirmed.

MR. JUSTICE WATTS concurs in the opinion of the Court.

Rep.] April Term, 1914.

Mr. Chief Justice Gary concurs in the result.

Messrs. Justices Hydrick and Gage dissent.

Mr. Justice Gage, *dissenting.* I have a settled conviction against the truth of the verdict herein. There is no sufficient testimony upon which to rest it.

I therefore dissent from the majority opinion.

It is true "the exact question is, for what purpose did Padgett go into the roundhouse?

If he went there for any purpose of his own, or there is an utter failure of evidence to prove any circumstances from which his purpose can be inferred, then the verdict ought to have been directed."

That is to say, the engineer, Padgett, must be brought within the terms of the Federal statute; there must be testimony tending to establish the fact that the engineer went into the roundhouse on the company's business.

A careful review of the plaintiff's testimony satisfies me that it does not tend to prove that conclusion, but the contrary, that the engineer went into the roundhouse upon his own business, out of the hours, against the rules and the practice, and to unwarrantably sleep in his engine.

The company is, therefore, not liable for his death.