November 18, 1914. The opinion of the Court was delivered by
Lewis H. Padgett was an engineer on the Seaboard Air Line Railway. He had been running a freight train, but in the first part of January, 1913, he was promoted to the passenger service, and was given a run between Columbia, S.C. and Savannah, Ga., and so was engaged in interstate commerce *Page 371 
When the train reached Columbia, the engine was detached and carried to the yard at Cayce, a station near Columbia. The engineer ran his engine into the yard near the roundhouse and left it upon a siding in the yard. He left his engine about 10:30 p. m., on the 11th day of January, 1913, Mr. Padgett's regular run would have required him to leave Columbia at 6:10 a. m. on the morning of the 12th. He was detained in the yard for a while so that he might take out another train, if necessary. It was not necessary and he was notified that he would make his regular run. The company had built a small boarding house at Cayce for the convenience of its trainmen, but let out the management of the house to a private party. When Mr. Padgett was notified that he would be required to make his regular run he went to the boarding house and found it full. He then went back on the yard, into the roundhouse and into an engine and went to sleep. At about 4:30 o'clock on the morning of the 12th the engine in which Mr. Padgett was *Page 372 
asleep was run out of the roundhouse down to the coal chute, to be supplied with coal, water, etc., for its trip. At the coal chute Mr. Padgett waked and got off the engine. He inquired where his engine was and was told it was in the roundhouse on track No. 3. The last seen of Mr. Padgett alive, he was going in the direction of the roundhouse. When it came time to call him he could not be found, and the engine went off without him. A little later he was found in an open, uncovered pit in the roundhouse dead. His engine had been standing with the step over the pit. The pit was a little over eight feet deep. There were no lights in the roundhouse.
Suit was brought in the behalf of his widow and dependent children for negligence under the Federal Employers' Liability Act. The defendant answered denying negligence. It denied that the deceased was engaged in interstate commerce at the time of his death. It pleaded that the deceased was a trespasser in the roundhouse, contributory negligence *Page 373 
and assumption of risk. The judgment was for the plaintiff, and the defendant appealed on numerous exceptions, but argues three propositions.
"Padgett did not come to his death while employed in interstate commerce."
The defendant claimed that the rules required the engineer to leave his engine in the yard, that he was then to go into the machinery room and "write off" and leave a memorandum as to repairs. That he had no duty that called him into the roundhouse. That a "hostler" then took charge of the engine, and if any repairs were to be made the hostler took it into the roundhouse where the machinists made the repairs and the hostler went to the roundhouse for the engine, took it out and carried it off for coal, water, etc., and put it back on the sidetrack. That the engineer then inspected it and if it was found to be in proper condition he took charge of it and went out on his run. That Mr. Padgett ended his service at 10:30 o'clock on the night of the 11th, and was not required to go to work until about 5:30 on the morning of the 12th, and he was killed between those hours, hence he was not engaged in the service of the railway when killed.
The defendant asked for a direction of verdict on the ground that there was no evidence that the deceased was engaged in interstate commerce at the time of his death. This was refused. The exact question is, for what purpose did Padgett go into the roundhouse? If he went there for any purpose of his own, or there is an utter failure of evidence to prove any circumstances from which his purpose can be inferred, then the verdict ought to have been directed.
There was evidence to show that when the engine came into the yard that night, it had a hot box and needed repair. That the rule required the engineer to inspect his engine only about a half hour before the leaving time. There was no intimation that he was forbidden to inspect it before. There was evidence that if the inspection was made at the required *Page 374 
hour and it was found that the repairs had not been made or improperly made, then the engine would have to be returned to the roundhouse to have the repairs properly made. That the repairs would take time and the time necessary would have to be taken even if it delayed the departure of his train. The evidence is circumstantial, but conclusions may be drawn from circumstances. On the trial appellant took the position that the purpose must be inferred from the circumstances.
The plaintiff offered to prove Mr. Padgett's declaration, but, on appellant's motion, the statements were ruled out, because his Honor said the purpose must be inferred from circumstances. In this ruling the appellant acquiesced, and of it there is no complaint. So the question is, are there circumstances from which his purpose can be inferred? It is not altogether fair to try a case on one theory and dismiss it on another. Mr. Padgett had recently been promoted to a passenger run. Repairs had to be made. He was already awake and dressed a few minutes before he was to be called. He was on the yard with his personal preparations made. He asked where his engine was placed and was told by the hostler in charge that it was on track No. 3 in the roundhouse, and started in that direction. Of course, he had the right, under the rules, to loaf around until the exact minute that the rule required him to take his engine, and if error had occurred in the mechanical department, he had the right to send his engine back and delay the train and say to his superiors, the rule does not require any more and I am not going to do any more than the strict rule requires. Would a faithful servant be likely to do that? That was question for the jury. Would a man recently promoted stand upon the strict letter of the rule? That was a question for the jury. There is a suggestion that Mr. Padgett went to his engine to sleep. The time at his disposal was short. He did not leave in the office a note as to where he could be found. He went to sleep on an engine that left earlier than *Page 375 
he was required to be called. He was found and waked early. The saying, "the engines belong to the company, but the runs belong to the men," is much relied upon to show that engines might be changed. The statement, however, is made that while a change could be made, yet the general practice was to allow the use of the same engine. The jury were told of the time that would elapse between the time Mr. Padgett was waked and the time of his regular call. Was it probable that he could use that time in sleep or in inspecting the engine to see that there was no unnecessary delay in doing his work? These were questions for the jury.
If they inferred from the circumstances that Mr. Padgett was doing the work that was required of him, not at the time it was required, but at a time when it was not forbidden, then they could conclude that he was engaged in interstate commerce, and under the protection of the Federal statute his Honor could not have directed a verdict on the ground that there was no evidence from which it could be inferred that Mr. Padgett was engaged at the time of his death in interstate commerce.
"No evidence tending to show negligence on the part of the defendant proximately causing the death of plaintiff's intestate."
There was an open pit over eight feet deep in the unlighted roundhouse. The step of this engine was over the open pit. "Hostlers" and their helpers were required to go in and get on this engine over the pit. The only lights available were torches. Mr. Padgett's unlighted torch was in his engine. Was this negligence? It was a question for the jury.
Did Mr. Padgett assume the risk? In SeaboardAir Line Railway v. Horton, 233 U.S. 492,34 Sup. Ct. 635, that Court says:
"Such dangers as are normally and necessary incident to the occupation are presumably taken into account in fixing *Page 376 
the rate of wages, and a workman of mature years is taken to assume risks of this sort, whether he is actually aware of them or not. But risk of another sort not naturally incident to the occupation, may arise out of the failure of the employer to exercise due care with respect to providing a safe place of work and suitable and safe appliances for the work. These the employee is not treated as assuming until he becomes aware of the defect or disrepair and of the risk arising from it, unless defect and risk alike are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them."
Mr. Padgett's run brought him into Cayce at night and he left early in the morning. His usual duties did not require him to go, and there is no reasonable inference from the testimony that he knew of the open pit or of the danger of open pits in roundhouse where some men were required to go and others might have occasion to go.
Appellant further says that the charge was inconsistent in that the plaintiff's 6th and 11th requests to charge were inconsistent with the defendant's 8 1/2 and his Honor charged the three. The rule that a Judge shall not charge inconsistent propositions is a good one, but that it is always reversible error, is not true. It must appear that the jury may have been misled to appellant's injury. The 6th and 11th requests of the plaintiff were based upon a finding of negligence by the jury. When his Honor charged appellant's request numbered 8 1/2, he left it to the jury to say whether Mr. Padgett knew or ought to have known of the open pit. There was no word of testimony to show that Mr. Padgett knew or ought to have known of the open pit. If his Honor erred, it was in favor of the appellant, and it can not complain of an error favorable to itself.
Judgment affirmed.
MR. JUSTICE WATTS concurs in the opinion of the Court. *Page 377 
MR. CHIEF JUSTICE GARY concurs in the result.
MESSRS. JUSTICES HYDRICK and GAGE dissent.