CASE 32.—ACTION BY MARY  HUNTER AGAINST  EDWARD
        CORRIGAN.—Nov. 12, 1909.

## Corrigan v. Hunter.

Appeal from Jefferson  Circuit  Court  (Common Pleas Branch, Second Division).

THOMAS R. GORDON, Judge.

Judgment for  plaintiff, defendant  appeals.—Reversed.

1. Master and Servant—Liability for Unauthorized Act of Servant.—The trainer of one maintaining a stable of race horses having no authority to hire or select boys to be used in training the horses, but his authority being restricted to use of such boys as had been employed for such purpose, his act of placing on a horse a boy not so employed was without the scope of his authority; so that, unless it was ratified, the master was not liable for injury to the boy.

2. Master and Servant—Ratification of Servant's Act—Evidence.—It is not sufficient evidence that C., a horseman, ratified the unauthorized act of his trainer in using in the training of horses a boy not employed for such purpose, that C. once saw the boy at the race track, rode to town on the same street-car with him, paid his fare into a theater and said that he was going to see his mother.

O'NEAL & O'NEAL for appellant.

McCHORD, HINES & NORMAN for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Reversing.

Richard Hunter, an infant 11 years of age, was injured while riding one of appellant's race horses. His mother,  Mary Hunter,  instituted this  action

against appellant for damages. The cause of action was based upon the wrongful act of appellant in using the boy without her consent in the hazardous business of riding race horses. The boy's leg was broken and it had to be amputated. The trial resulted in a verdict for Mary Hunter, the mother, in the sum of $750. From the judgment based thereon, this appeal is prosecuted.

According to the evidence for appellee, Richard Hunter, about three weeks prior to the accident, had gone to the race track near the city of Louisville where appellant had a stable of horses. This he did without his mother's consent. Mary Hunter, the mother, was working out, and when she left for her daily work the boy was at home. Upon the return of his sister from school in the afternoon, Mary Hunter learned that the boy had not gone to school. Search was then made for him for several days, but the boy was not found. After more than a week the boy returned to his mother's home, and told her that he had a home with Mr. Corrigan on Fourth street, and all that he had to do was to cut the kindling, carry water, and bring in coal and help around the house. In the course of three or four days the boy made a second visit to his mother. About a week later he was injured. June Collins, appellant's trainer, placed the boy on a thoroughbred yearling with instructions to take the horse to the stable. As the boy proceeded on the horse to the stable, some one who was cleaning out a stall threw some hay out of the stall on a sack, and frightened the horse. The boy tried to stop the horse, but was unable to do so. It finally stumbled and fell, throwing the boy to the ground. In getting up, the horse crushed the boy's ankle and foot. He was taken to a hospital, and remained there for five months.

While there his leg was amputated. While at appellant's stable the boy slept in the bed with appellant's trainer, June Collins. He ate meals which were furnished by appellant to his employes. According to the evidence for appellant, the boy had run away from home, and was brought to appellant's trainer to see if the latter could do something with him. The trainer took the boy for the purpose of teaching him to ride, with a view to making a profit out of his training for himself and the boy or his mother. Only appellant, who was occasionally at the track, and his secretary, who was stationed there, had authority to hire or engage the services of boys for the purpose of exercising and cooling off the horses. At the time of the accident there were six or seven boys employed for this purpose. While the trainer had authority to select boys from among those hired for that purpose to ride appellant's horses, he had no authority to employ or discharge boys. He was given no discretion in the matter of selecting employes. When the boy was injured, appellant had on hand a sufficient number of boys to perform the services required, and there was no emergency or necessity requiring the services of any outside boy. Appellant contends that the court erred (1) in refusing to award him a peremptory instruction; and (2) in assuming as a matter of law that the trainer in placing the boy on the horse was acting within the scope of his authority.

Appellee insists that the facts adduced in evidence were sufficient to justify the court in concluding as a matter of law that Collins, the trainer, was acting within the scope of his authority. In this connection appellee relies upon the principle announced in Robards v. P. Bannon Sewer Pipe Co., et al.,

130 Ky. 380, 113 S. W. 429, 18 L. R. A. (N.
S.) 923, wherein this court said: "It is not
the test of the master's liability for the wrong-
ful act of the servant from which injury to a
third person has resulted that he expressly authori-
ized the particular act and conduct which occasioned
it. In most cases where the master has been held
liable for the negligent or tortious act of the servant
the servant acted, not only without express author-
ity to do the wrong, but in violation of his duty to
the master. It is in general sufficient to make the
master responsible that he gave to the servant an
authority, or made it his duty to act in respect to the
business in which he was engaged when the wrong
was committed, and that the act complained of was
done in the course of his employment. The master
in that case will be deemed to have consented to and
authorized the act of the servant, and he will not be
excused from liability, although the servant abused
his authority, or was reckless in the performance of
his duty, or inflicted an unnecessary injury in ex-
ecuting his master's orders. The master who puts
the servant in a place of trust or responsibility, or
commits to him the management of his business or
the care of his property, is justly held responsible
when the servant, through lack of judgment or dis-
cretion, or from infirmity of temper, or under the
influence of passion aroused by the circumstances
and the occasion, goes beyond the strict line of his
duty or authority, and inflicts an unjustifiable injury
upon another."

The above doctrine was announced in a case
where a party not on the premises was shot by
a night watchman employed to protect the premises
and to use firearms for that purpose. There the

general authority of the night watchman to protect the premises and to use firearms was fully stated in the substituted petition, and it necessarily followed that the act was authorized by the master under the general authority given to the night watchman.

Counsel for appellee argue in this case that Collins, the trainer, had general authority to train appellant's horses, and to select and place the boys upon the horses; that in doing this he was acting in the interest of his master and performing a service for the latter; that the authority to do the particular act (i. e. the placing of Richard Hunter upon the horse) naturally followed from the general authority which the trainer had to train the horses. Appellee's position in this matter would be sound if it were shown that Collins, the trainer, had general authority to hire or select such boys as he saw fit for the purpose of exercising the horses. Under those circumstances, it would not be necessary to show that he had particular authority to select Richard Hunter for that purpose; for Hunter would then be included within the class which Collins had the right to, and did, employ. In that event the statement of Collins that he was using the boy for his own benefit and with a view to making a jockey of him, to their mutual profit, would play no part in the case. He could not make such a claim when the boy was selected under his general authority for the purpose of exercising horses. In this case no such authority was shown. The uncontradicted evidence of Corrigan, his secretary and trainer, is that the trainer had no authority to hire or select boys to be used in training the horses. Corrigan had a sufficient number of boys on hand to perform such services. No emergency existed which required the use of an additional

boy. The trainer had no right to place upon the horse a boy not engaged for that or similar services. If Hunter had been one of the boys hired for that purpose, then the trainer's act would have been that of the master, and the latter would have been liable. Having no authority to employ or select boys generally to exercise the horses, and his authority being restricted to the use of such boys as had been employed for that purpose, it necessarily follows that the particular act of placing Hunter upon the horse in question was not within the scope of the trainer's authority. In performing the act, Collins acted for himself alone, and not within the scope of his authority as appellant's trainer.

It therefore follows that appellant is not liable unless there was such acquiescence on his part as amounted to a ratification of the act done. When we come to consider this question, we find that appellant's secretary saw Hunter riding a horse some two or three times. He then ran the boy away from the premises. Collins again took the boy back because he felt sorry for him, as he had no home. After that time it is not shown that either appellant or his secretary had knowledge of the fact that the boy was riding appellant's horses. The only other circumstance from which acquiescence might be inferred was the statement of the boy that upon one occasion he saw Corrigan at the track and asked the latter to take him down town. Corrigan let the boy ride down on the same street car with him, and gave him 15 cents to pay his way into the theater. The boy stated that Corrigan said he was going to see the boy's mother. There is nothing in these facts to show acquiescence. They go no further than to show that Corrigan saw the boy once, rode down on the

same street car with him, paid his way into a theater, and said that he was going to see the boy's mother. It is not shown for what purpose he was going to see the mother, nor is it shown that he ever in fact went to see her. Manifestly this is not sufficient to show that appellant knew the boy was riding his horses, and thus acquiesced in the arrangement between Collins and the boy. Our conclusion, then, is that there was not sufficient evidence on the question of ratification to justify the court in submitting the case to the jury.

For the reasons given, we are of opinion that the court erred in refusing appellant a peremptory instruction. Upon the next trial, unless there be additional evidence tending to show that Collins had authority to select boys other than those hired by Corrigan or his secretary for the purpose of exercising horses, or additional evidence tending to establish the acquiescence of appellant in the arrangement made by Collins with the boy, the court will instruct the jury to find for appellant.

Judgment reversed and cause remanded with directions for a new trial consistent with this opinion.

RESPONSE TO PETITION FOR REHEARING BY JUDGE HOBSON.

Upon a careful reconsideration of this case we are unable to see that the conclusion we reached is unsound or in conflict with the cases cited by counsel. McGee was the man in charge. He hired and discharged hands. The negro, Collins, was a mere laborer, or hand, whose duty it was to care for the horses. He had no greater authority than a man

hired to care for a horse ordinarily has. If instead of taking the horse to water, he gets a boy to ride the horse to the watering place, he does not in this represent the master. Collins was not in charge of Corrigan's business. He had no authority to employ another or to have him to ride the horses. In L. & N. R. R. Co. v. Willis, 83 Ky. 57, the conductor took the boy on the train and used him. He was the managing agent of the defendant in charge of the train, and so took the boy on the train and carried him off with him without the father's consent. In N. N. & M. V. Co. v. Carroll, 17 R. 374, the conductor had the boy making a coupling, and with the knowledge of the dangerous position in which the boy was placed, himself gave the signal for the train to come back at the time he was hurt. These cases would be parallel to this if McGee and not Collins had placed the boy on the horse. Hendrickson v. L. & N. R. R. Co., 137 Ky. 562.

Petition overruled.