HOFFMAN, Respondent, v. ROEHL ET AL., Appellants.

(No. 4,445.)

(Submitted September 17, 1921. Decided November 14, 1921.)

[203 Pac. 349.]

*Personal Injuries—Master and Servant—Respondeat Superior—Automobiles—Scope of Employment.*

Master and Servant — *Respondeat Superior* — Automobiles — Injury to Pedestrian—Scope of Employment.
1. Where an automobile dealer's chauffeur, demonstrating a car for his employer, acceded to the request of the prospective buyer and permitted the buyer's daughter to drive the car, accompanied by the chauffeur, who lost control, the chauffeur, who then took hold of the wheel and steered the car upon the sidewalk, striking a pedestrian, was acting within the scope of his employment, rendering the employer liable for the injuries suffered by the pedestrian.

Same—*Respondeat Superior*—Scope of Employment.
2. Where an employer is sought to be held liable for personal injuries caused by the negligence of his employee under the doctrine of *respondeat superior*, the decisive question is whether at the time of the accident the latter was acting within the scope of his employment; if so, the employer is responsible.

---

1. Responsibility for negligence of driver of leased or demonstrating car, see notes in Ann. Cas. 1916A, 673; 40 L. R. A. (n. s.) 457; 44 L. R. A. (n. s.) 113; 51 L. R. A. (n. s.) 1164.

[61 Mont. 290.]

Same—Scope of Employment—When Question of Fact—When of Law.
3. Generally speaking, the question whether an employee was acting within the scope of his employment when he caused injury to another is one of fact; where, however, the injury was caused while he was doing something which had no connection with his duties, the question becomes one of law.

*Appeals from District Court, Fergus County; Jack Briscoe, Judge.*

ACTION by Peter Hoffman against E. R. Roehl and another. From a judgment for plaintiff and an order overruling defendants' motion for a new trial, Roehl appeals. Affirmed.

*Messrs. Belden & De Kalb* and *Messrs. Gunn, Rasch & Hall,* for Appellants, submitted a brief and one in reply to that of Respondent; *Mr. Carl Rasch* argued the cause orally.

There is not a case in the books which would countenance a recovery against the owner of an automobile upon the facts of this case. *Hartley* v. *Miller,* 165 Mich. 115, 33 L. R. A. (n. s.) 81, 130 N. W. 336, is authority for the proposition that even if Roehl himself, the owner of the car, had been present and had turned the car over to Martha Bean for her use in making the trip to Judith Place, as was done by Leedy, his employee, there would be no liability. We also cite *McFarlane* v. *Winters,* 47 Utah, 598, L. R. A. 1916D, 618, 155 Pac. 437, approvingly cited by this court in *Lewis* v. *Steele,* 52 Mont. 300, 157 Pac. 575; *Herlihy* v. *Smith,* 116 Mass. 265; *Wollaston* v. *Park,* 47 Pa. Sup. Ct. R. 90; *Beville* v. *Taylor,* 202 Ala. 305, 80 South. 370; *Mangan* v. *Foley,* 33 Mo. App. 250; *Cooper* v. *Lowery,* 4 Ga. App. 120, 60 S. E. 1015; *Hills* v. *Strong,* 132 Ill. App. 174.

But the courts have gone further in the application of the rule of the owner's nonliability, and under like circumstances have absolved him from responsibility for injuries when caused by the negligence of his own servant in the management and operation of a car or other instrumentality intrusted to him. And, under the settled law upon this subject, the defendant, Roehl, could not be held in damages, even if Leedy, instead of Martha Bean, had been operating the car. "The master's

responsibility," said Mr. Justice Moody, speaking for the court in *Standard Oil Co.* v. *Anderson,* 212 U. S. 215, 53 L. Ed. 480, 29 Sup. Ct. Rep. 252, "cannot be extended beyond the limits of the master's work. If the servant is doing his own work, or that of some other, the master is not answerable for his negligence in the performance of it."

There is, perhaps, no case where the rule is more clearly stated, and no case is more frequently cited in the decisions as a leading authority, than *Wyllie* v. *Palmer,* 137 N. Y. 248, 19 L. R. A. 285, 33 N. E. 381. See, also, *Clawson* v. *Pierce-Arrow Motor Car Co.,* 182 App. Div. 172, 170 N. Y. Supp. 310; *Lotz* v. *Hanlon,* 217 Pa. St. 339, 118 Am. St. Rep. 922, 10 Ann. Cas. 731, 10 L. R. A. (n. s.) 202, 66 Atl. 525; *Goodrich* v. *Musgrave Fence & Auto Co.,* 154 Iowa, 637, 135 N. W. 58; *Ludberg* v. *Barghoorn,* 73 Wash. 476, 131 Pac. 1165; *O'Brien* v. *Stern Bros.,* 223 N. Y. 290, 119 N. E. 550; *Long* v. *Richmond,* 68 App. Div. 466, 73 N. Y. Supp. 912; *Spradlin* v. *Wright Motor Car Co.,* 178 Ky. 772, 199 S. W. 1087; *Neff* v. *Brandeis,* 91 Neb. 11, 39 L. R. A. (n. s.) 933, 135 N. W. 232; *Symington* v. *Sipes,* 121 Md. 313, 47 L. R. A. (n. s.) 662, 88 Atl. 134; *Wright* v. *Intermountain Motor Car Co.,* 53 Utah, 176, 177 Pac. 237; *Brown* v. *Jarvis Engineering Co.,* 166 Mass. 75, 55 Am. St. Rep. 382, 32 L. R. A. 605, 43 N. E. 1118; *Walker* v. *Hannabal & St. Joe R. R. Co.,* 121 Mo. 575, 42 Am. St. Rep. 547, 24 L. R. A. 363, 26 S. W. 360.

The plaintiff not only failed to make a case against the defendant, Roehl, but there was a like failure of showing negligence on the part of Leedy in connection with the operation of the car. The accident was due to an emergency which could not have been foreseen and which made it impossible to avoid it. (20 R. C. L., p. 29; *Hughes* v. *Oregon Improvement Co.,* 20 Wash. 294, 55 Pac. 119.) This principle was applied by this court in *Bracey* v. *Northwestern Improvement Co.,* 41 Mont. 338, 137 Am. St. Rep. 738, 109 Pac. 706. (See, also, *Eckert* v. *Long Island R. Co.,* 43 N. Y. 502, 3 Am. Rep. 721; *Floyd* v. *Philadelphia & Reading R. Co.,* 162 Pa. St. 29, 29 Atl. 396;

*Ackerman* v. *Union Traction Co.,* 205 Pa. St. 477, 55 Atl. 16;
*Bishop* v. *Belle City Street Ry. Co.,* 92 Wis. 139, 65 N. W.
733; *Kelch* v. *National Contract Co.,* 178 Ky. 632, 199 S. W.
796; *Pond* v. *Norfolk & W. Ry. Co.,* 111 Va. 735, 69 S. E. 949;
*Hartley* v. *Lasater,* 96 Wash. 407, 165 Pac. 106.)

*Mr. E. K. Cheadle* and *Messrs. Wheeler & Baldwin,* for Re-
spondent, submitted a brief; *Mr. Cheadle* and *Mr. James H.
Baldwin* argued the cause orally.

It appears from the evidence in this case that at the time
plaintiff was injured the car was owned by the defendant Roehl;
this alone was sufficient evidence to take the case to the jury
and to justify the ruling of the court in denying the motion for
a directed verdict. Ownership of the car being established, that
makes out a *prima facie* case that the operator of the car was
engaged in the owner's service, and the burden is upon the
owner to show that such is not the fact. (*Hartnett* v. *Hudson,*
165 N. Y. Supp. 1034, 1036; *Ferris* v. *Sterling,* 214 N. Y. 249,
Ann. Cas. 1916D, 1161, 108 N. E. 406; *George* v. *Carstens Co.,*
91 Wash. 637, 158 Pac. 529; *Benn* v. *Forrest,* 213 Fed. 763, 130
C. C. A. 277.)

At the time of the injury the defendant Roehl was the owner
of the car and the same was actually proceeding under the
control of his agent, and under this condition the law presumes
that the car was being driven for the owner Roehl and that in
driving the same the defendant Leedy was acting within the
scope of his employment. (*Ploetz* v. *Holt,* 124 Minn. 169, 144
N. W. 745; *Daily* v. *Maxwell,* 152 Mo. App. 415, 133 S. W. 351;
*Marshall* v. *Taylor,* 168 Mo. App. 240, 153 S. W. 527; *Hays* v.
*Hogan,* 180 Mo. App. 237, 165 S. W. 1125; *Birch* v. *Aber-
crombie,* 74 Wash. 486, 50 L. R. A. (n. s.) 59, 133 Pac. 1020.)

The terms "course of employment" and "scope of authority"
are not susceptible of accurate definition. What acts are within
the scope of the employment can be determined by no fixed rule,
the authority from the master generally being gatherable from
the surrounding circumstances. (26 Cyc. 1533, 1534.)

An act is within the scope of the servant's employment, where necessary for the accomplishment of the purpose of his employment and intended for that purpose, although in excess of the powers actually conferred on the servant by the master. The purpose of the act rather than its method of performance is the test of the scope of employment. (26 Cyc. 1534; sec. 5450, Rev. Codes; see, also, *Mansfield* v. *Burns Detective Agency,* 102 Kan. 687, L. R. A. 1918D, 571, 171 Pac. 625; *Sina* v. *Carlson,* 120 Minn. 283, 139 N. W. 601; *Ellinghouse* v. *Ajax Livestock Co.,* 51 Mont. 275, L. R. A. 1916D, 836, 152 Pac. 481.)

Even if it be conceded that Martha Bean was actually directing the movements of the car at the time of the injury to plaintiff and that the defendant Leedy was not authorized by the defendant Roehl to allow her to operate the car as she did, the defendant Roehl would still be liable for the injury suffered by the plaintiff in this action. The owner is liable for the chauffeur if, while using the car on his employers' business, he allows a third person riding with him to assume the management of the car and an injury results from the negligent driving of such person. (*Slothower* v. *Clark,* 191 Mo. App. 105, 179 S. W. 55, and cases cited; *Prince* v. *Taylor* (Tex. Civ. App.), 171 S. W. 826; *Wooding* v. *Thom,* 148 App. Div. 21, 132 N. Y. Supp. 50, 53; *Hollidge* v. *Duncan,* 199 Mass. 121, 17 L. R. A. (n. s.) 982, 85 N. E. 186; *Thyssen* v. *Davenport Ice etc. Co.,* 134 Iowa, 749, 13 L. R. A. (n. s.) 572, 112 N. W. 177; *Campbell* v. *Trimble,* 75 Tex. 270, 12 S. W. 863; *Bamberg* v. *International Ry. Co.,* 53 Misc. Rep. 403, 103 N. Y. Supp. 297; *Kilroy* v. *Delaware & H. C. Co.,* 121 N. Y. 22, 24 N. E. 192; *Bank of California* v. *Western Union Tel. Co.,* 52 Cal. 280, 290.)

This case does not fall within the rule announced by this court in the case of *Bracey* v. *Northwestern Improvement Co.,* 41 Mont. 338, 137 Am. St. Rep. 738, 109 Pac. 706, cited by appellants. Viewing the facts in this case in the light of the reason for the rule last announced in the above case, and it follows that even though it were admitted that the defendant Leedy inflicted the injury upon the plaintiff

in this case while attempting to avoid injury to himself or others, the liability would exist, for the reason that the defendant Leedy, acting within the scope of his employment as the agent of the defendant Roehl, carelessly brought about and contributed to the situation of peril in which appellants contend he found himself. The rule is that where one, by his own act or negligence, puts another in peril, and to escape the consequence of his act of negligence does something that injures another, he is liable for the injury. (*Carpenter* v. *Campbell Automobile Co.*, 159 Iowa, 52, 140 N. W. 225; *Prince* v. *Taylor* (Tex. Civ. App.), 171 S. W. 826, 829.)

MR. JUSTICE GALEN delivered the opinion of the court.

This is an action for damages on account of personal injuries sustained by the plaintiff by reason of having been run into by a Ford automobile belonging to the defendant E. R. Roehl, driven at the time on Main street, in the city of Lewistown, by one Martha Bean, the daughter of Daniel Bean; the latter at the time having been negotiating with Roehl for the purchase of the car. E. R. Roehl and Joseph Leedy, employee, were jointly made defendants. It appears that Daniel Bean wanted to buy a Ford automobile and approached the defendant Roehl, an automobile dealer in Lewistown, and inquired whether he had any bargains in Ford cars. Roehl replied that he had one which he would sell for $250, but that the engine had to be overhauled and the motor cleaned. Bean told Roehl to have the work done, "prove that the car would run uphill," and he would buy it. Three or four days subsequently, on November 21, 1916, Bean visited Roehl's place of business and Roehl then and there said to Bean that the car was cleaned and in readiness to make a "go out." Bean asked Roehl who he would send out with the car, to which he replied: "Joe Leedy." At the time Roehl was in his office, and Bean went therefrom into the workroom adjoining, and upon inquiry found Joe Leedy. Leedy cranked the car and both Leedy and Bean got into the car and went away. At Bean's suggestion, Leedy drove the

car to Bean's residence, several blocks distant from the starting point, in order that Bean might show it to his wife and daughter. After arriving at Bean's house, his wife and daughter came out and looked at the car. His daughter Martha was accompanied by a friend, Miss Christopher, and both had their hats and wraps on, as Martha was intending to go across town to Judith Place, in order to make delivery of a dress to a lady for whom she had made the same. Bean invited the girls to get into the car and requested Leedy to let Martha drive, saying: "She will be my chauffeur if I get it, so let her be the first to run it." Martha got in, took the wheel, and Leedy sat in the front seat alongside of her; Mr. Bean and Miss Christopher getting into the rear seat. The car was then driven by Martha across town to Mrs. Taft's residence, where she stopped the car and made delivery of the dress. She then started the car again and proceeded up Main Street to the intersection of Fourth Avenue, where traffic was greatly congested. At or near that point a speeding motorcycle caused two men to jump out of its way and into the path of the car driven by Miss Bean, in consequence whereof she lost control of the car and Leedy grabbed hold of the wheel, and the car was steered upon the sidewalk, striking and seriously injuring the plaintiff. Leedy testified: "I have resided in Lewistown, Montana, since January, 1914, continuously. On the twenty-first day of November, 1916, I had been engaged in the automobile business as an employee of E. R. Roehl since January, 1914. I saw Daniel Bean for the first time on November 21, 1916. On said date I took a certain Ford automobile from the garage of E. R. Roehl, at Lewistown, Montana, for the purpose of exhibiting or demonstrating the car to the said Daniel Bean, at the direction of Mr. Roehl. I first met Martha Bean on that day." At that time the plaintiff was employed by the Chicago, Milwaukee & St. Paul Railroad, as an engineer, and was earning from $150 to $175 per month. He was in good physical condition, thirty-five years of age, and married.

Issue being joined, the cause was tried to a jury and resulted in a verdict and judgment against the defendant Roehl in favor of the plaintiff for the sum of $16,800. At the close of plaintiff's case, the defendant Roehl moved for a directed verdict, which motion was denied, and the case went to the jury without any evidence being offered in defense. Appeal is prosecuted by the defendant Roehl from the judgment and order overruling defendant's motion for a new trial.

Several errors are assigned, involving but one principal question, solution of which is determinative of the case, *viz.*: [1] The liability of the defendant Roehl for damages on account of plaintiff's injuries, in application of the doctrine of *respondeat superior*.

The rules applicable have been crystallized into statute in this state. Section 5442, Revised Codes, provides: "An agent represents his principal for all purposes within the scope of his actual or ostensible authority, and all the rights and liabilities which would accrue to the agent from transactions within such limit, if they had been entered into on his own account, accrue to the principal." And section 5450 reads as follows: "Unless required by or under the authority of law to employ that particular agent, a principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency, including wrongful acts committed by such agent in and as a part of the transaction of such business, and for his willful omission to fulfill the obligations of the principal."

These statutory provisions are merely declarative of the common law, and in their application to the facts in the case before us the liability of the employer is clear. The employee Leedy was directed by his employer to take the automobile from the garage "for the purpose of exhibiting or demonstrating the car" to Daniel Bean, a prospective purchaser; and in such position, and acting under such direction of his employer, the object and purpose of the employee was necessarily to bring about accomplishment of the sale in contemplation. In acceding

to the wishes of Martha Bean to go across town to Judith Place to make delivery of the dress, and to the request of her father that she be permitted to drive the car, we think Leedy acted within the scope of his employment. The agent took his place in the front seat of the automobile, alongside of Martha Bean, showed her how to control the car, how to start it, what pedals to use, and the like. Miss Bean testified: "Mr. Leedy said that I was doing very good, and I told him that I had never driven a car in town before and that I wouldn't drive it if he hadn't been with me. I told him to pay particular attention to me and see that nothing happened, to be ready to help me if anything should happen, because I didn't feel exactly safe on Main Street. That was the first time I had ever attempted to drive a car in the business section of any town."

As applicable to this case, we quote with approval the language used by Mr. Justice Young, speaking for the Supreme Court of New Hampshire, in *Danforth* v. *Fisher*, 75 N. H. 111, 71 Atl. 535, as follows: "The test to determine whether a master is liable to a stranger for the consequences of his servant's misconduct is to inquire whether the latter was doing what he was employed to do at the time he caused the injury complained of. If he was, the fact that he was not doing it in the way expected is immaterial [citing cases]. But, if at the time he did the act which caused the injury he was not acting within the scope of his employment, the master is not liable." And this view is entirely consistent with the provisions of our statute and in accord with the views expressed by this court in *Lewis* v. *Steele,* 52 Mont. 300, 157 Pac. 575.

The decisive question in every instance is whether the agent [2] or employee was, at the time of negligent injury, acting within the scope of his employment. If he acted independently of his employer, or was upon missions or purposes of his own, [3] then the employer is not to be held accountable in damages. Necessarily, in most instances, the question is one of fact. It becomes one of law, however, whenever it appears that the given deviation was made for the purpose of doing

something which had no connection with the servant's duty. "In determining whether a particular act is done in the course of the servant's employment, it is proper first to inquire whether the servant was, at the time, engaged in serving his master. If the act is done while the servant is at liberty from service and pursuing his own ends exclusively, there can be no question of the master's freedom from all responsibility, even though the injury complained of could not have been committed without the facilities afforded to the servant by his relation to his master." (1 Shearman & Redfield on the Law of Negligence, 6th ed., sec. 147.)

The employer or principal is liable for the negligent acts of his employee while acting as his representative, and the purpose of the act rather than its method of performance is the test of the scope of his employment. (26 Cyc. 1534.)

Defendant has cited many cases in support of his contention of nonliability, but they are all distinguishable from the case under consideration. In those cases the missions of the servant were outside the scope of his employment and pertained primarily to the employee's personal pleasure, business or affairs, or were instances where the employee had surrendered control of the automobile to a third person for a purpose independent of and not connected with the business of the employer.

We concede the law as contended for by the defendant, that where the servant steps aside from his master's business, if but for a short space of time, and does an act not connected with the business, which is harmful to another, the master is not liable, the reason being that the relation of master and servant does not at the time exist; but here the servant continued about the business of his employer, adopting methods deemed expedient, resulting in a third person's injury, and the employer is liable. (18 R. C. L., p. 796.)

In this case the proof neither shows an independent mission by the employee for purposes of his own outside the scope of his employment nor the surrender of control of the operation of the car to a stranger. In making exhibition and demonstra-

tion of the car to the prospective purchaser, Leedy permitted Miss Bean to operate the car; and at the time of the accident he was by her side on his master's business, grabbed the wheel, and the accident complained of resulted. There was no break in the continuity and purpose of the mission, and the hand of the servant was physically on the steering wheel of the car at the time of the accident. It is plain that the accident occurred through the negligence of the agent in the transaction of the business of the agency, and in consequence the principal is liable.

By legal intendment the act of the employee became the act of the employer; the individuality of the employee being identified with his employer. The latter is deemed to have been constructively present, and the act of the employee that of the employer, and thus the latter becomes accountable for his own proper act or omission. (18 R. C. L., p. 786.)

"He who expects to derive advantage from an act which is done by another for him, must answer for any injury which a third person may sustain from it," said Lord Chief Justice Best in *Hall* v. *Smith*, 2 Bing. 156.

We are not unmindful that the application of the rule may, and often does, work hardships, and that in the case before us a hardship is undoubtedly worked upon the employer; however, the rule is founded on reason and looks to the protection of third persons. The verdict might be considered excessive in view of the evidence, but, as no contention is made in this respect, the subject is passed without further notice.

The judgment and order appealed from are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES REYNOLDS, COOPER and HOLLOWAY concur.

Rehearing denied January 6, 1922.