## Reynolds' Administrator v. Black Mountain Corporation.

(Decided October 23, 1931.)

POPE & HUFF and JAS M. GILBERT for appellant.

CLEON K. CALVERT, J. G. BRUCE and B. M. LEE for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

In the case of Louisville & N. R. Co. v. Reynolds' Adm'r, 240 Ky. 662, 41 S. W. (2d) ——, this day de-

cided, the court directed a verdict in favor of the Black Mountain Corporation, and, from the judgment entered thereon, the administrator of Reynolds has appealed, and upon his motion he has been allowed to prosecute this appeal upon that record. The administrator had sued both corporations, and in his petition had alleged:

"And on Nov. 3, 1929, and for some time prior thereto, it (The Black Mountain Corporation) owned and operated a large coal-mine at Kenvir, and had constructed a number of camp houses at Kenvir, in which its employees lived, who worked at its said coal mine, and through which village its co-defendant railroad was operating its said trains in transporting coal from said mine of its co-defendant, Black Mountain Corporation.

"He states that said Black Mountain Corporation had also constructed a number of business houses which it was maintaining in the operation of its said mines, including a restaurant, and barber shop, and employed men to operate said business houses. He states that there was on said date a public road-crossing or street that extended across said railroad track of the Louisville & Nashville Railroad Company in the town of Kenvir and about 75 feet distant from said barber-shop and restaurant of the Black Mountain Corporation and which crossing the people, including the deceased, Walter Reynolds, was accustomed to use when not obstructed and blockaded by the trains and cars of this defendant railroad company.

"He states that when said crossing was blockaded by said cars and trains of the said railroad company, it was the general practice and custom of all the people living in said town or village of Kenvir to cross over said railroad track between the cars or under the cars while said railroad crossing was blockaded, and such use of said tracks was so general and by such a great number of people and was so well known to the employees of the said railroad company, and said railroad had acquiesced in such public use of its tracks in said town, as that said railroad track had become converted into a public passway, especially when it had the grade crossing blockaded as aforesaid; and that it was the duty and general custom of the employees of said railroad company in

operating its trains thru said town and over said crossing and especially when it had obstructed said grade crossing, to keep a constant look-out for men, women and children who might be passing from one side of said town across said railroad tracks to the opposite side, and to give timely warning and signals by ringing the bell on its engine or sounding the whistle before starting its train or trip of cars over said crossing and thru said village, which village was situated only a few feet from the tip-house of the defendant, Black Mountain Corporation, where said railroad cars were loaded with coal and moved over the said tracks.

"He states that on Nov. 3, 1929, said railroad company had blockaded and obstructed said grade crossing for at least 16 consecutive hours, and that during all of said time, men, women and children were constantly passing over said tracks and between or beneath said railroad cars which blockaded said crossing, and that said facts were well known to the employees in charge of the engine and train of the defendant railroad company.

"He states that his decedent, Walter Reynolds, was an infant, only 11 years of age, and that on the 3rd day of Nov., 1929, this defendant, Black Mountain Corporation, without the consent or knowledge of the plaintiff, who is the father of said Walter Reynolds, in the operation of its said restaurant, sent, directed and caused said infant, Walter Reynolds, to go from said restaurant to the home of R. H. Ladd to get the keys for said restaurant that it might be operated on said day, and that it was negligent and careless in so doing; and that while said Walter Reynolds was returning from said mission with said keys with which the defendant, Black Mountain Corporation, might unlock the door of said restaurant on said day, and while passing either between two coal cars or underneath one of said cars standing on said tracks, and across said grade-crossing, the agents, servants and employees of this defendant railroad company of this gross negligence and carelessness and without keeping any look-out or giving any signal or warning, suddenly started said train, engine and trip of cars and caught said Walter Reynolds under the wheels of said train and thereby crushed him to death.

"Plaintiff states that owing to the youth and indiscretion of said Walter Reynolds, the defendant, Black Mountain Corp., was negligent and careless in sending said infant on said perilous mission, and without the consent or knowledge of his parents, and that the agents, servants and employees of the defendant railroad company were likewise grossly negligent and careless in blockading said road crossing for such an unreasonable length of time, and further negligent and careless and reckless in starting said train of cars thru said populous community and village without maintaining a proper look-out and without giving reasonable and timely warning to notify said decedent Walter Reynolds and the public in general that it was about to move said engine and trip of cars, and all of which acts of negligence and carelessness upon the part of these defendants, commingling, co-operating and co-ordinating, the one with the other, brought about and was the direct and proximate cause of the death of said infant on said occasion, and but for which same would not have occurred."

From this it will be seen the administrator bottoms his case against the Black Mountain Corporation upon certain allegations, which we shall briefly review and comment upon. He alleges the public road crossing was blocked, and all the proof is that it was not blocked.

He alleges the Black Mountain Corporation sent this boy for the keys to its restaurant, and the proof from its own witnesses is this:

"He asked me to let him go after the key. He asked me if I wanted him to go after the key, and I told him, yes."

Thus it is proven, by his own witness, that the Black Mountain Corporation did not send the deceased after the key, but that he solicited the right to go, and was told he might. We fail to understand how any duty was thereby imposed on this appellee to see that he went and returned safely could arise from that transaction.

And, even had Adams sent deceased for the keys, his act would not have amounted to a sending by the Black Mountain Corporation; there being no authority, express or implied, in Adams, to in any way bind it by such action.

Grover Adams, testifying for the plaintiff in this case, said:

"Q. Who hired you to work up there? A. Mr. McCraner.

"Q. What is his connection with the Black Mountaint Corp.? A. Manager.

"Q. When he hired you, what did he hire you to do? A. Just waiting on people in the restaurant.

"Q. Did you have any authority to hire any hands under you? A. No.

"Q. Did Mr. McCraner authorize you or tell you to hire anybody to do part of the work? A. No, sir.

"Q. That was part of your job you was hiring somebody to do? A. Yes, sir.

"Q. Did you report to the Black Mountain Corporation that you was hiring a man or boy to help you to do the work? A. No, sir. I did not.

"Q. The fact is this boy would come around there and you yourself would give him something to wash dishes and run errands, instead of doing it yourself. A. Yes.

"Q. You did that for your own benefit and not to having him work for the company? A. I sent him over there myself."

There is no testimony in this case to show that the Black Mountain Corporation or its manager ever knew that the deceased was helping anybody in this restaurant, nor that any person in charge of the direction of its business knew it. Hence appellee is and was not responsible in any way, for the accident that resulted in his death.

In Cincinnati, N. O. & T. P. Ry. Co. v. Rue, 142 Ky. 694, 134 S. W. 1144, 34 L. R. A. (N. S.) 200, and in many other cases this court has laid it down that a master is not responsible for the acts of a servant, unless the act is done in execution of authority, express or implied, to the servant from the master.

In Corrigan v. Hunter, 139 Ky. 315, 122 S. W. 131, 130 S. W. 798, 43 L. R. A. (N. S.) 187, Corrigan owned certain race horses, and employed a trainer, Collins, and several boys, under Collins, to exercise and care for the horses. Collins, of his own volition, and without authority from, or knowledge of, Corrigan, placed Hunter, a

boy 11 years old, on one of the horses to ride it to the stable. The horse ran away, stumbled, fell, and injured the youthful rider. It was held that, since Collins had no authority to employ the boy, and Corrigan no knowledge that he was being used in connection with the horses, Corrigan was not liable.

In Lackat v. Lutz, 94 Ky. 287, 22 S. W. 218, 15 Ky. Law Rep. 75, an employee asked a stranger to go into a certain building for the purpose of delivering a message, which it was the duty of the employee to deliver himself. While in the building, endeavoring to deliver the message, the stranger was injured. It was held that the master was not liable.

The appellant contends the Black Mountain Corporation should be held responsible for the act of Grover Adams in sending, as it says he did, this Reynolds boy for this key and in employing him to work in this restaurant without the consent of his parents upon the principle,

"Qui facit per alium facit per se, which means that which the superior has put the inferior in motion to do, must be regarded as done by the superior himself. Cooley's Work on Tort (3d Ed.) p. 1016."

He overlooks the fact that what Grover Adams did was not something the Black Mountain Corporation had employed him to do.

He cites the case of Haehl v. Wabash R. Co., 119 Mo. 325, 24 S. W. 737, but the facts in that case are so very different from the facts here that it is not applicable. In the Haehl case one James W. Hill was a watchman on a bridge. Haehl was a trespasser whom Hill assaulted, shot, and killed, and in an action by the widow of Haehl the railroad company was held responsible.

The proof here shows this Reynolds boy was employed to do some small chores by and for Adams, of which employment the manager of the Black Mountain Corporation knew nothing, he was working for Adams and not the Black Mountain Corporation, and under the evidence it was properly awarded a directed verdict.

The judgment is affirmed.