## Broadway Motors, Inc., v. Bass.
## Same v. O'Loughlin.

(Decided Dec. 12, 1933.)

WHEELER, WHEELER & SHELBOURNE for appellant.
A. M. NICHOLS and W. A. BERRY for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

Broadway Motors, a corporation, was the owner and operator of a garage in Paducah, Ky. In October, 1931, an automobile belonging to appellant which was being driven by one Andrew Freeman, collided with the automobile of Dr. J. W. Bass in which Dr. Bass and J. C. O'Loughlin were riding, and, as a result of the collision, Dr. Bass was seriously injured and O'Loughlin was also injured. Dr. Bass and O'Loughlin instituted separate suits in the McCracken circuit court against appellant to recover damages for their respective injuries. The two cases were tried together by the same jury and resulted in a verdict and judgment in favor of Dr. Bass for the sum of $20,000 for his personal injuries and $449 for damages to his automobile, and in favor of O'Loughlin for the sum of $500 for his injuries. From those judgments these appeals are prosecuted, which will be disposed of in one opinion.

The facts are in substance these: There was a used car department in connection with appellant's garage and E. W. Anderson was a commission salesman in the used car department—selling used cars on a commission. Berchel Thompson and Andrew Freeman came to the used car department and Thompson became interested in the purchase of a used car and Anderson took Thompson and Freeman in the car and drove them around the block and returned to the garage, and told them that it was his day on the lot and he could not demonstrate the car on that day. Thompson told Anderson he would come back later and "try the car out some more." Thompson did not return, but on the afternoon of the same day Freeman came back to the garage and told Anderson that Thompson did not understand a gear-shift car and that he, Freeman, had to go and see about some fire insurance and that he would take the car with him. Anderson sought T. E. Campbell, who was president and general manager of appellant and in charge of the garage, to get his permission to let Freeman take the car, but being unable to find Campbell, he

let Freeman have the car and Freeman took it and got Thompson and his wife and they proceeded to drive the car out in the country eight or ten miles from Paducah to the home of Thompson's father, and, while on their return, the collision occurred as above stated.

The decisive question involved herein is whether or not the relation of master and servant or principal and agent existed between appellant and Freeman so as to hold appellant responsible for the acts of Freeman.

It is insisted for appellees that Anderson being the agent of appellant and having consented to Freeman's taking the car from the lot, appellant is liable for creating such condition by its acts through Anderson and in support of this contention cite and rely on as authority the case of Hoffman v. Roehl, 61 Mont. 290, 203 P. 349, 20 A. L. R. 189, and other cases of similar import, none of which disclose a state of facts similar to the facts of the instant case.

In the Hoffman Case, supra, the automobile dealer sent his agent with the car to demonstrate it to a prospective purchaser and the agent permitted the daughter of the prospective purchaser to drive the car; the agent being present, seated in the front seat with the daughter and directing its operation. In the instant case the dealer did not direct or consent to Freeman taking the car, nor authorize Anderson to do so. Freeman obtained the car from Anderson without the knowledge and consent of the dealer, and, as shown by uncontradicted evidence, to which we will later refer, Anderson had no right or authority to let Freeman take the car and his act in so doing was beyond the scope of his authority and was a personal act on his part.

Appellees, plaintiffs below, introduced Anderson as their witness, presumably to show the scope of his agency with appellant. Anderson in his testimony relates the incident of letting Freeman have the car, as follows:

"Q. Do you know Andrew Freeman and Berchel Thompson? A. Yes sir.

"Q. Did you on or about the 28th day of October last undertake to sell a car to either of them? A. To Thompson I did.

"Q. Tell the jury what efforts you made to

sell him. A. They came in the garage that morning about ten o'clock and wanted to look at some used cars. They looked over the stock of cars we had on hand and picked out a Willys-Knight and I took them out in the car two or three blocks and back and he said he would be back that afternoon to try the car out some more. So when they came back, nobody came back but Freeman, and he said that Thompson was not familiar with a shift-gear car and that he had to go and see about some fire insurance and said he would take the car with him. I knew Freeman but did not know Thompson, and I let him have the car on that ground."

On cross-examination Anderson further testified:

"Q. Mr. Anderson, when you let Mr. Freeman drive this car away you knew you was doing something that was in violation of the rules of the company? A. Yes, I knew I was violating the rules. Mr. Campbell never told me direct, but I had it from the other fellows that it was against the rules of the company to let a car go out. I went to see where Mr. Campbell was and he was gone and I let him have the car.

"Q. You thought it was all right and you took it on yourself to let him have it? A. Yes sir.

"Q. You could not find Mr. Campbell and you let him have the car yourself? A. Yes sir."

It is our view that Anderson's testimony is more favorable to appellant than to appellees. It strongly tends to show that he exceeded his authority in letting Freeman have the car.

The evidence of Freeman is, in substance, substantially the same as the evidence of Anderson. Freeman was asked to tell the jury how he got the car and he testified as follows:

"A. I met Berchel Thompson in town and he was looking for an automobile, and he asked me to walk down to the Abell Motor Company, and I did, and we looked at some cars down there and started on home, and we passed Broadway Motors and he said, 'Let's stop in here' and we stopped in there and looked at a couple of Chevrolet cars, and Anderson showed him a Willys-Knight and he seemed

to like it all right, and Anderson drove it around the block for him. His wife was working and he wanted to show it to his wife, and Anderson said he could not demonstrate it that afternoon, that it was his day on the lot, but if I wanted to he would give me a part of his commission if I would take the car and demonstrate it to the Thompson boy— if he bought the car. That afternoon I went back and got the car and carried it out and demonstrated it to him.

"Q. Who let you have it when you went back? A. Anderson."

The relation of master and servant or principal and agent is denied by the answer of appellant, defendant below, therefore, the burden was on appellees to establish that Freeman was the agent or servant of appellant. Bickel Coal Co. v. Louisville Tire Co., 228 Ky. 239, 14 S. W. (2d) 775. It is shown by the uncontradicted evidence of Anderson and Freeman, both of whom were introduced as witnesses for appellees, plaintiffs below, that Anderson let Freeman have the car without the knowledge or consent of Campbell who was in charge of the garage and that Freeman's obtention of the car was contrary to and in violation of the rules of appellant. Campbell testified that Anderson's capacity with the appellant was only that of a commission used-car salesman, and his duties were to find prospective purchasers for used cars and try to sell same to them. He stated that the general instructions and rules given by him to all salesmen were not to take the cars out or to permit them to be taken out without his consent, and that he had so informed Anderson; that he did not know Andrew Freeman and had never seen him until he appeared as a witness on the trial of the case; and that Freeman never at any time had any connection in any capacity with appellant company. There is no conflict in the evidence with respect to Anderson's agency or authority. It is shown by the uncontradicted evidence of Freeman and Anderson that Freeman obtained the car from Anderson for the purpose of going out to see about some fire insurance and incidentally to demonstrate the car to Thompson, pursuant to an agreement with Anderson that, in the event he, Freeman, effected such sale, that he would share commissions with Anderson.

In the light of the uncontradicted evidence disclosed by this record, the conclusion is inescapable that Freeman was not the agent or servant of appellant but the agent or representative of Anderson and Thompson. Saunders' Ex'rs v. Armour & Co., 220 Ky. 719, 295 S. W. 1014. The case of Corrigan v. Hunter, 139 Ky. 315, 122 S. W. 131, 133, 130 S. W. 798, 43 L. R. A. (N. S.) 187, is a case where Collins was employed by Corrigan as a trainer of horses. Collins permitted a boy named Hunter to ride and take part in the training of the horses, and, while so doing, Hunter was injured. It was established by the evidence that Collins was not authorized by Corrigan, his employer, to hire or permit others to engage in riding or training the horses. The court said:

"In performing the act, Collins acted for himself alone, and not within the scope of his authority as 'appellant's trainer.''

In McCoy v. Griffith et al., 196 Ky. 406, 244 S. W. 871, 873 it is said:

"The essential elements are that the master shall have control and direction not only of the employment to which the contract relates but all of its details, and shall have the right to employ at will, and for proper causes discharge those who serve him. If these elements are wanting, the relation does not exist." 18 R. C. L. 490, 491.

Then applying the rule enunciated in the cases, supra, to the facts of the instant case, Anderson had no right or authority to permit Freeman to take the car from the lot and possessions of appellant for the purpose of demonstration to a prospective purchaser without the consent of appellant and in violation of the rules and instructions of appellant, and, when he did so, he was acting for himself and not within the scope of his authority as appellant's agent.

Anderson being employed by appellant to sell cars merely raises the presumption that he was acting in the scope of his authority when attempting to sell a car, which presumption is but an inference drawn from the circumstance of his employment, and, when it was shown by appellant that Anderson had no authority to let Freeman have the car to exhibit to Thompson, the pre-

sumption was overcome. Mullen & Haynes Co. et al. v. Crisp, 207 Ky. 31, 268 S. W. 576.

In view of what has been said, we are constrained to the conclusion that appellees failed to establish the relation of master and servant or principal and agent between appellant and Freeman, and appellant is not, therefore, responsible for the acts of Freeman, and the trial court erred in failing to sustain appellant's motion for a directed verdict.

The judgment is reversed and remanded for proceedings consistent with this opinion.