## Louisville & Nashville Railroad Company v. Walker's Administrator.

### (Decided January 19, 1915.)

### Appeal from Whitley Circuit Court.

1. **Employers' Liability Act—Employe Defined.**—Under the Federal Employers' Liability Act an employe who is engaged in interstate commerce while actually employed at his work will be treated as in the course of his employment when he is going to or from his work on the premises of the employer in a car appointed by his employer for the purpose of carrying him to or from his work, or while he is walking to or from his work on the premises of the employer and along the way set apart by the employer as a means of ingress and egress.

2. **Master and Servant—Liability of Master for Injury to Servant in Going from His Work.**—Where an employe of a railroad company was killed by the negligence of his employer while he was walking, at the end of the day's work, on premises of the company, to boarding cars owned by it in which he boarded, a right of action arose in behalf of his administrator under the Federal Employers' Liability Act to recover damages for his death.

3. **Master and Servant—Negligence.**—While an employe of a railroad company was going from his work to boarding cars of the company and for this purpose was walking across a trestle from which he was knocked by a piece of timber projecting from a push-car operated by other employes of the company, the company was properly held liable in damages for the negligent manner in which the operators of the push-car loaded on it the timber and for their negligence in failing to give the employe who was killed warning of its approach.

4. **Employers' Liability Act—Liability for Negligence of Employe Not Engaged in Interstate Commerce.**—To entitle an employe engaged in interstate commerce to recover damages for injuries sustained in such commerce, it is not necessary that the injuries should have been caused by the negligence of another employe engaged in interstate commerce. It will be sufficient if the negligent party was an employe of the company.

B. D. WARFIELD, C. H. MOORMAN and HIRAM H. TYE for appellant.

O'REAR & WILLIAMS and POPE & ROSE for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The Louisville & Nashville Railroad Company is engaged in interstate commerce, and Ancil Walker, on the day of his death, was employed by it as a laborer in such commerce. Whether he was so employed immediately at the time of his death is a much disputed question and will be later carefully considered.

At the time of his death he was about thirty years of age and left surviving him a widow and one child about three years of age.

In this action by his administrator to recover damages for his death there was a verdict and judgment accordingly for $4,750. Before stating the grounds of reversal relied on by counsel for appellant a somewhat extended statement of the facts should be made in order that the questions submitted for review may be intelligently disposed of.

The railroad company, at the time Walker came to his death, was engaged in repairing or rebuilding a

trestle known as the Oak street trestle, situated on its line of road in the State of Tennessee and near the city of Knoxville, and Walker was employed as a laborer in this work. The foreman of the crew engaged in this work was A. C. Crutchfield, who also operated the boarding cars in which the men lived. Crutchfield had charge of the bridges of the railroad company in a territory traversed by its line of road extending from a point in Kentucky to a point in Tennessee, and the boarding cars, which were owned by the railroad company, were moved by it to the different places at which Crutchfield and his men were ordered to work. The matter of boarding the men and the amount charged for this service was under the control of Crutchfield, the railroad company having apparently no direct concern in it, although it would upon request of Crutchfield, take out of the wages due the men the board for his benefit.

On the day Walker was killed the boarding cars, in which the men, including Walker, boarded and stayed at night, were standing on the tracks of the company something over a mile from the trestle on which this crew of men were at work, and the men went from these boarding cars to their work each morning and returned to them at the close of the day. Sometimes the men went to and from the boarding cars to their work on hand-cars of the company, and at other times they walked.

On the day in question the men started from their work to the boarding cars on hand-cars, but after going a short distance were compelled to take the hand-cars off the track on account of obstructions, and they were then directed by Crutchfield, the foreman, to walk to the boarding cars, and this they set out to do by walking on the track of the company as it was usual and customary for them to do when not riding, there being in fact no other convenient or practicable way to go to and from the boarding cars and the work except on the track. Between the place of work and the boarding cars the track for a short distance ran on a high trestle that the men had to walk across, and it appears that on the outside of each rail of the track, which was entirely unprotected by barriers of any kind, there was a running-board upon which the men could stand or walk, or they could walk between the rails on the ties.

As Walker was walking across this trestle, a car, known as a push-car, owned by the company, came down

the track from the direction in which Walker was walking.· For the purpose of letting this car, which was being operated by two employes of the company, pass, he stepped on the plank outside the rail and while so standing was struck and knocked from the trestle by a large splinter that projected several inches over the side of the car from a piece of timber on the car to which it was· attached. The piece of timber from which the splinter projected, as well as the other pieces on the car, consisted of material which the company found it could not use in its work, and the men who were operating the car were taking these pieces of timber to their homes after the day's work was over for the purpose of using them as kindling or fire-wood, having been permitted by an assistant foreman of the company, who had control of the car, to use it for the purpose of carrying home the timber that another foreman of the company had told them they might take.

Brad Thomas, one of Crutchfield's crew, was walking on the trestle with Walker, but a few feet ahead of him. He testified that he saw the push-car coming when it was a short distance away and stepped off the track on to the running-board, but did not see the piece of timber projecting over the side of the car until one of the men on the car holloed at him to "watch that piece!" That, upon receiving this warning, he at once placed himself in a more careful position and holloed at Walker, who was close behind him, to "look out!" He further testified that the projecting piece of timber struck his clothing and also struck Walker and knocked him off the trestle, and that at the time the push-car passed him it was going down a slight grade at a speed of about ten miles an hour, the two men in charge of it riding on the side of the car, pushing it with their feet. He also said that if it had not been for this projecting piece of timber Walker could have safely stood where he was standing when knocked off.

The evidence for the railroad company was to the effect that Hobbs and Collins, the men operating this car, did not have authority from the foreman either to use the push-car or get the timber they were carrying on it. It also appears in the evidence that there were places eight or ten feet apart in this trestle from which Walker fell on which a person could stand and be entirely out of the way of passing trains, and there is some

suggestion to the effect that if Walker had been standing on one of these places, he could not have been hit by the projecting splinter, and that when he saw the car coming he should have gotten to one of these places of safety. It is also a theory of the company that Walker fell from the trestle and was not knocked off by the splinter.

The evidence, however, shows that if the splinter had not been projecting from the car it would have passed Walker without touching him; and here it may be observed that, although Walker could have seen, and doubtless did see, the push-car approaching him, it seems apparent that he did not see the projecting splinter, nor, indeed, did Thomas, who was immediately ahead of him, until one of the men holloed at him to look out for it. In short, there is really no evidence of contributory neglect on the part of Walker in the record, although this feature of the case was submitted to the jury for their consideration in appropriate instructions, and we may also assume from the evidence that Walker was knocked off the trestle by the splinter.

Returning now to the question whether Walker, at the time he came to his death, was, within the meaning of the Federal Act, in the employment of the company, the argument is made by counsel for the company that the protection afforded by this act ended when Walker quit his work on that day and that he was not in the employment of the company at the time he was killed, as his day's work had then ended and he was going to his boarding place.

It is further insisted that if Walker, when going to his boarding place, could be regarded from any standpoint as an employe, he was not, within the meaning of the act, an employe engaged in interstate commerce. We think, however, that if he should be considered at that time as an employe at all, he was an employe engaged in interstate commerce, because this was the only kind of employment in which he was engaged. At the time of his death he was either an employe engaged in interstate commerce or he was a mere licensee using the tracks of the company in going from his place of work to the boarding car.

It is very clear that while actually engaged at work for the company he was an employe engaged in interstate commerce, and we think it equally clear that the moment his day's work ended he was not thereby con-

verted into some other kind of an employe, but that he either retained his character as an interstate employe or became, when his work ended, and while going to the boarding car, under the circumstances stated, a licensee.

After giving to this question careful consideration, our opinion is that in going from his place of work to his boarding car he continued in the character of an employe of the company, engaged in interstate commerce. The boarding cars in which he took his meals and remained at night were owned by the company. They were carried about by the company from one State to another State and from place to place for the convenience and accommodation of its employes, and at the time in question were standing on the tracks of the company. The employes were not only invited to, but were, in a measure, obliged by the company, to use these boarding cars, and the only convenient and practicable way to go to and from the cars and the place of work was on the track of the company where Walker was when knocked off. Furthermore, it was not only the custom of the men to use this way, but on this particular occasion they were directed by the foreman in charge of the work to so do after the hand-cars had been abandoned.

We, therefore, have a case in which the employe not only worked for the company in the day-time, but ate his meals and occupied at night a place on its premises, set apart by the company for his use and accommodation. And so, we think, that, under these circumstances, an employe such as Walker was should be treated as engaged in interstate commerce not only when actually employed at his work, but while using the premises of the company in going to and from the place set apart for him to eat and sleep and his work on the premises of the company. In other words, within the contemplation of the act, the course of his employment covered not only the time he was actually engaged at work, but the time he was engaged in going to and from his work.

The Federal Hours of Labor Act, making it unlawful for any carrier to permit an employe subject to the act to be or remain on duty for a longer period than sixteen consecutive hours, defines employes as "persons actually engaged in or connected with the movement of any train." Osborne's Admr. v. C., N. O. & T. P. Ry., 158 Ky., 176. But the Federal Employers' Liability Act, providing that the common carriers subject to the act

shall "be liable in damages to any person suffering injury while he is employed by such carrier in such commerce     *     *     *     for such injury or death resulting in whole or in part from the negligence of any of the officers, agents or employes of such carrier     *     *     *" does not undertake to define the meaning of the word "employed" as used in the act or to describe, except as indicated, the employes to whom the act applies.

The failure of Congress to define the meaning that the words "employment" and "employe" should have in the application of the act, manifests, as we think, a purpose in this legislation that these words should be used in their ordinary sense and be interpreted according to their usage in the law of master and servant. Viewed in this light, there is abundant authority for the proposition that employment does not always either begin or end with the actual work of the day in which the employe is engaged, but may begin when the employe enters the premises of his employer for the purpose of going to his work and may continue while he is going from his work at the end of the day on the premises of the employer.

Neither is it open to doubt that the relation of master and servant or employer and employe in cases like this begins with the employment and continues until it is ended. For example, it is a generally recognized rule that a railroad employe, while being carried to and from his work on the cars of his employer, is to be treated as being in the employment of the company to the same extent as if actually engaged in the work for which he is employed. Accordingly, if he is injured by the negligence of the company while being thus carried to or from his work, his right of recovery is controlled by the same principles that would control if he had been injured while actually engaged at his work. Bailey on Personal Injuries, Vol. 1, page 63; Labatt on Master and Servant, Vol. 2, page 1823; Vick v. New York Central & Hudson River R. R. Co., 95 N. Y., 267, 47 Am. Rep., 36; Gilman v. Eastern R. R. Corporation, 10 Allen (Mass.), 233, 87 Am. Dec., 635; McQueen v. Central Branch R. R. Co., 30 Kan., 689; Ryan v. Cumberland Valley R. R. Co., 23 Pa. State, 384; Ionnone v. N. Y. Railroad Co., 21 R. I., 452, 79 Am. St. Rep., 812.

We, therefore, think there would be no doubt that if Walker, while riding on the hand-car on which he and

the other men started to go, under the direction of the foreman, from his work to the boarding cars, had been injured by the negligence of the company, he would be treated as being in the employment of the company with the rights accorded to such employes.

Now, if it be a sound rule that an employe, who is injured by the negligence of his employer while being carried to or from his work on an instrumentality furnished by the employer for that purpose, has a right of action against the employer, we are unable to perceive any good reason why an employe who is injured by the negligence of the employer while walking to or from his work on the premises of the employer, and in a place selected or set apart, either by direction or by well-established custom or usage, should not have the same right of recovery as if he had been injured by the negligence of the employer when being carried by it to or from his work.

The right of the employe and the liability of the employer do not depend upon the means used by the employe in going to and from his work, but upon the question whether, in going to and from it, he remains on the premises of the employer and uses the place or the means selected or designated by the employer or established by usage and custom as a means of ingress and egress to and from his work. The employer in a case like this owes the employe the duty of furnishing him on its premises a reasonably safe place of ingress and egress to and from his work, and this duty is neither added to nor diminished by the fact that the employe rides or walks. Whether he does one or the other, the protection afforded him is the same and the duty and liability of the employer identical. The doctrine of safe places and safe premises and safe instrumentalities in this class of cases is rested on the rule of general application that the employer is under a duty to exercise ordinary care to protect the employe from danger, not only while he is actually engaged at his work, but while he is on the premises of the employer in going to and from his work along the way set apart by the employer for this purpose.

There seems to us no room or reason for the assertion in a case presenting facts like this that the duty of the employer ends the moment the day's work is over, or that, when the employe is on his way home on the premises of the employer and going over the way ap-

pointed for the purpose, he forfeits his right to the protection afforded employes while engaged in work and takes all the risk of harm that may come to him from the negligence of the employer. Ellsworth v. Matheney, 104 Fed. Rep., 119, 51 L. R. A., 389; Ewald v. Chicago & Northwestern R. R., 70 Wis., 420, 5 Am. St. Rep., 178; Virginia Bridge & Iron Co. v. Jordon, 143 Ala., 603, 5 A. & E. Ann. Cases, 709.

The other material question in the case is, was the death of Walker caused by the negligence of employes of the company?

Briefly, the evidence upon this feature of the case, although conflicting, was, we think, sufficient to show and to authorize the jury to find that Walker was knocked from the trestle by the projecting splinter and that the push-car was being used by the employes at the time with the consent of the company through its foreman, and for the purpose of enabling them to carry to their homes the timber that was on the car.

It is true that the men who were operating the push-car, although employes of the company, had finished their day's work and were on their way home, but we do not regard the circumstance that their day's work was over of any moment in determining the rights of the parties to this litigation. We think that while operating this push-car for the purpose stated Hobbs and Collins should be treated as employes of the company; but, whether this be so or not, the liability of the company for their acts attaches on account of the acts of its foreman in giving these men permission to use the car at the time and for the purpose they were using it, as this foreman was at the time he gave the permission admittedly in the employment of the company. And, this being so, it is not indispensable to a recovery by the plaintiff that he should show that the men operating the push-car were employes at the time the accident occurred.

Under the Federal Act it is not necessary that the employes whose negligence caused the injury should themselves, at the time the negligence occurred, be engaged in interstate commerce. The carrier must be engaged in such commerce and the person injured must be employed by it in such commerce, but the employes of the carrier whose negligence produces the injury need not be so engaged. It is sufficient if they are employes, as the act reads: "Liability shall attach for such in-

jury or death resulting in whole or in part from the negligence of any of the officers, agents or employes of such carrier.'' Pedersen v. Delaware R. Co., 229 U. S., 146, 57 L. Ed., 1125.

This push-car was being used by the persons operating it with the consent of an authorized employe of the company, and when he consented that they might use it for the purpose indicated, the company at once undertook the duty and obligation of exercising ordinary care to see that it was so used as not to inflict injury upon other employes of the company who were exercising care for their own safety. The employe who consented to the use of the car knew the purpose for which it was going to be used and engaged that the persons who were thus given the right to use it would exercise ordinary care in its use.

In using the car and in carrying timber on it the men operating it were not trespassers nor engaged in any wrongful act. They were doing what they had been given permission to do by an authorized employe of the company, but they were doing it in a negligent way, and the company is, we think, chargeable with their negligence. Walker was entitled to be furnished by the company reasonably safe conduct on his way from his work to the boarding car, and this duty imposed on the company was broken by the negligence of the persons who were using, with its consent, this push-car.

That these men were guilty of negligence in placing the timber on the car in the manner they did, is scarcely open to doubt, and they were also negligent in failing to give Walker notice of the projection of the splinter and in running the car at the speed the testimony shows it was going with the splinter so projecting.

We are referred by counsel for the railroad company to the cases of Eastern Ky. Ry. Co. v. Powell, 17 Ky. L. R., 1051; Bowling Green Stone Co. v. Capshaw, 23 Ky. L. R., 945; Illinois Central R. R. Co. v. Dotson, 24 Ky. L. R., 1459; Louisville & Nashville R. R. Co. v. Routt, 25 Ky. L. R., 887; Corrigan v. Hunter, 139 Ky., 315; Ballard's Admx. v. L. & N. R. R. Co., 128 Ky., 826; C., N. O. & T. P. Ry. v. Rue, 142 Ky., 694; Sullivan v. L. & N. R. R. Co., 115 Ky., 447, and other cases holding that the employer is not liable to persons injured by the acts of employes committed outside the scope of their employment or out of the field of their duty; but we **do not**

think this line of cases is applicable to the facts of this case. Here the actionable negligence consisted in the permission given by an authorized employe of the company to the men to use, for the purpose they were using it, the push-car, and their negligent use of it was the same as his negligent use of it would have been. If the employe who gave to these men permission to use the car had been using it himself in the manner they were using it, we think there could be no doubt of the liability of the company for his negligence, and, in our opinion, there is no difference, so far as the liability of the company is concerned, between his use of the car and the use made of it with his permission.

Some errors in the admission and rejection of evidence are pointed out, but, not regarding them as substantial, we do not think it would serve any useful purpose to discuss them.

The instructions are critcized, but we think they fairly submitted the issues to the jury.

Upon the whole case, we think the judgment should be affirmed, and it is so ordered.