FREDERICK ELMER CARTER v. ST. LOUIS, TROY
& EASTERN RAILROAD COMPANY, Appellant.

Division One, April 13, 1925.

1. **INTERSTATE COMMERCE: Railroad: Trackman.** A belt-line rail-
road, though only eighteen miles long and its tracks entirely
situated within a single state, is engaged in interstate commerce,
if its roadbed, tracks and other instrumentalities are indiscrimi-
nately used by it in interstate and intrastate commerce; and a
trackman while spreading cinders—a work having for its purpose
the repair, maintenance and upkeep of the tracks of such railroad—
is employed in interstate commerce.

2. ———: **Trackman: Injury During Intermission of Work: Incidental
to Employment.** When the servant, employed in work upon tracks
of a railroad engaged in interstate commerce, voluntarily turns
aside from the work he is employed to do, to pursue some errand
of his own, the relation of master and servant for the time being
is suspended; but when the cessation is incidental to the employ-
ment and for some natural or necessary purpose fairly falling with-
in the contemplation of the parties, the relation is not thereby sus-
pended. Where the railroad company intended that plaintiff and
the other section men, employed in spreading cinders upon and
otherwise repairing its tracks, should eat their noonday lunch on
its premises close to the place where they were at work; that they
should stop work to eat when the foreman gave them permission,
and resume work at his direction; and at 11:45 o'clock the fore-
man told them to stop work for lunch, and they put down their

shovels, procured their lunch buckets from the near-by motor car and assembled under or in the shade of a freight car standing on a switch track close by and there ate their lunch, and fifty-one minutes after the foreman told them to stop for lunch he ordered them to resume their work, and just as they were in the act of beginning immediately to comply with his order other freight cars were backed against the one under and near which they had been sitting, and plaintiff was caught and crushed, the relation of master and servant had not been suspended during the intermission, but the eating of the lunch was incidental to the work of surfacing the roadbed and tracks with cinders, and in legal contemplation a part of such work, and plaintiff at the time of his injury was employed in interstate commerce.

3. **SAFETY APPLIANCE ACT**: Maintaining Automatic Couplers. A railroad engaged in interstate commerce is required by the U. S. Safety Appliance Act to equip all of its cars used thereon with couplers coupling automatically by impact. The duty does not end with the mere installation of such couplers, but they must be so maintained that they will at all times automatically couple when operated on a straight track.

4. ———: **Protects All Employees: Section Men as Well as Switchmen**. The protection afforded by the U. S. Safety Appliance Act is not restricted to employees engaged in coupling or uncoupling cars. The carrier engaged in interstate commerce is liable in damages whenever its failure to equip its cars with couplers coupling automatically by impact is the proximate cause of injury to any employee engaged in the discharge of his duty, regardless of the position he may be in or the work he may be doing at the moment of his injury. Where cars kicked back on a straight switch track failed to couple automatically by impact with others standing thereon, and by reason of such failure such other cars were driven back upon another further down the switch, under which a section man was, as an incident to his employment, eating his lunch at the noon hour, and it caught and crushed him, the railroad company, being engaged in interstate commerce, is liable in damages for his injuries.

5. ———: **Contributory Negligence: Assumption of Risks**. Neither contributory negligence nor assumption of risks is a defense to an action for damages for personal injuries based upon a violation of the U. S. Safety Appliance Act.

6. ———: **Federal Act Exclusive: Workmen's Compensation Acts Inapplicable**. The liabilities and obligations of interstate carriers to make compensation for personal injuries suffered by their employees while engaged in interstate commerce are regulated both

Carter v. St. Louis, Troy & Eastern Railroad Co.

inclusively and exclusively by the Federal Employers' Liability Act, and a workmen's compensation act of the state in which the injury was inflicted is therefore without influence in determining the interstate carrier's liability or the injured employee's remedy with respect to such injury.

Citations to Headnotes; 1, Commerce, 12 C. J. 57; 2 to 5, Master and Servant, 28 Cyc. 1087, 1124, 1181, 1230; 6, Commerce, 12 C. J. 101.

Appeal from St. Louis City Circuit Court.—*Hon. Victor H. Falkenhainer*, Judge.

AFFIRMED.

*Rassieur & Goodwin* for appellant.

(1)   The Federal Employers' Liability Act only applies to employees injured while engaged in interstate commerce. Fed. Employers' Liability Act, sec. 1, 8 Fed. Stats. Ann. (2 Ed.) 1208.   (2)   At the time plaintiff received his injuries he was not engaged in any act of interstate commerce. Williams v. Schaff, 282 Mo. 497; Ill. Cen. Ry. Co. v. Archer, 74 So. 135; Perez v. Ry. Co., 192 S. W. 274; Reeve v. Railroad, 144 Pac. 63.   (3)   In the absence of a special contract an employer owes no duty to an employee to furnish him a suitable or safe place in which to eat his lunch. Allen v. Chehalis Lumber Co., 61 Wash. 159. Therefore, if plaintiff went under the freight car with the permission of the defendant he was, at most, a licensee. Ellsworth v. Metheney, 104 Fed. 119; Connell v. New York Central, 129 N. Y. Supp. 666. And in some of the states plaintiff under such circumstances would be held to be a trespasser. Louisville Ry. Co. v. Hocker, 64 S. W. 638; Wilson v. Ry. Co., 113 S. W. 101.   (4)   The Federal Employers' Liability Act applies only to employees, not licensees or trespassers. Sec. 1, Fed. Employers' Liability Act, 8 Fed. Stats. Ann. (2 Ed.) 1208; Williams v. Schaff, 282 Mo. 497.   (5)   In actions brought under the Federal Employers' Liability

Act the common law as interpreted by the Federal courts governs the action. Pryor v. Williams, 254 U. S. 43; 8 Fed. Stats. Ann. (2 Ed.) 1217. (6) There is no duty on defendant's part to ring a bell, sound a whistle, or otherwise warn section men working on or about a railroad track. Kirkland v. Bixby, 222 S. W. 463. (7) Under the Missouri decisions it is only under the humanitarian doctrine that a section man may recover, and with reference to section men it is held that the defendant is under no duty to take steps to avert the accident until actual knowledge that the section man is in a position of peril, oblivious of his danger. Evans v. Railroad, 178 Mo. 517; Davies v. Ry. Co., 159 Mo. 1; Clancy v. Transit Co., 192 Mo. 615; McGrath v. Transit Co., 197 Mo. 97; Brockschmidt v. Railroad, 205 Mo. 435; Withm v. Delano, 184 Mo. App. 677; Ayers v. Railroad, 190 Mo. 229; Sissel v. Railroad, 214 Mo. 522; Degonia v. Railroad, 224 Mo. 564; Trigg v. Transit Co., 215 Mo. 536; Van Dyke v. Railroad, 230 Mo. 283; Nivert v. Railroad, 232 Mo. 639; Rashall v. Railroad, 249 Mo. 509; Cabal v. Railroad, 251 Mo. 257. (8) Plaintiff was not in a position of peril until the coupling failed to make, and the five cars started to roll towards the car under which he was eating his lunch, and there is no evidence that anything could then have been done to avert the accident. (9) Plaintiff is not entitled to recover on account of any alleged violation of the Safety Appliance Act, because section men eating lunch under a freight car are not within the class of employees that the Safety Appliance Act was enacted to protect. St. Louis Ry. Co. v. Conarty, 238 U. S. 242, 59 L. Ed. 1290; Lang v. New York Central, 255 U. S. 455. (10) In voluntarily going under a freight car to eat his lunch, with knowledge of the danger, plaintiff under the decisions of the Federal courts, assumed as a matter of law, the risk of injury resulting therefrom. Boldt v. Pennsylvania Railroad, 245 U. S. 411, 62 L. Ed. 389; Seaboard Air Line v. Horton, 233 U. S. 492; Pryor v. Williams, 254 U. S. 43; Newberry v. Central Georgia Ry. Co., 271 Fed. 117. (11) Under the

undisputed evidence, plaintiff's remedy, if any, is under the Workmen's Compensation Act of the State of Illinois. Laws Illinois 1913, pp. 335 to 356; Laws Illinois 1921, pp. 446 to 461.

*Sidney Thorne Able* and *Charles P. Noell* for respondent.

(1)   Defendant's instruction in the nature of a demurrer to the evidence was rightly overruled. (a)  Because both plaintiff and defendant were engaged in interstate commerce at the time respondent was injured. The relationship of employer and employee existed during the lunch period, and at the time plaintiff was injured he was on his way to complete the interstate work on the tracks which had been left unfinished at the time his foreman ordered him to lunch.  North Carolina Railroad v. Zachary, 232 U. S. 248, 58 L. Ed. 591; Erie Railroad v. Winfield, 244 U. S. 170, 61 L. Ed. 1057; B. & O. Railroad v. Kast, 299 Fed. 419; Philadelphia Railroad v. Smith, 250 U. S. 101; Grand Trunk Ry. Co. v. Knapp, 233 Fed. 950; Atlantic Coast Line Railroad v. Williams, 284 Fed. 162; Graber v. Duluth Railroad Co., 159 Wis. 414; Knowles v. Railroad Co., 223 N. Y. 513; Polloco v. Lehigh Valley Ry. Co., 236 N. Y. 110; B. & O. Railroad Co. v. Whiteacre, 124 Md. 411; Rhea v. Railroad, 171 Mo. App. 160; Jackson v. Butler, 249 Mo. 342.   (b) The requirements of the Federal Employer's Liability Act that it shall extend to common carriers engaged in interstate commerce by railroad applies to railroads wholly within a state as well as those running between states, and the Safety Appliance Act also applies to railroads wholly within a state.  Devine v. Railroad, 259 Ill. 449; United States v. Colorado Railroad, 157 Fed. 321, 15 L. R. A. (N. S.) 167; Wabash Railroad Co. v. United States, 168 Fed. 1; United States v. Railroad Co., 143 Fed. 353; Chicago K. & S. Ry. Co. v. Kindlesparper, 234 Fed. 1; Trowbridge v. Belt Ry., 192 Mo. App. 52; Findley v. Coal & Coke Co., 76 W. Va. 747; Ross v. Sheldon, 176 Iowa, 618.   (c)   A section man does not

assume the risk where a train is not operated in the usual and customary manner. Davis v. Philadelphia Ry. Co., 276 Fed. 187; Lehigh Railroad v. Doktor, 290 Fed. 763; Director-General v. Templin, 268 Fed. 483; Waiswila v. Ill. Cent. Railroad Co., 220 Ill. App. 113. (d) Railroad tracks over which both intra- and interstate commerce is hauled are instrumentalities of interstate commerce and section men employed in the maintenance or repair of same are engaged in interstate commerce. Pederson v. Railroad, 229 U. S. 146, 57 L. Ed. 1125. (2) The mere violation on the part of defendant of the Safety Appliance Act gives plaintiff a good cause of action regardless of whether or not at the time the plaintiff was injured he was engaged in interstate commerce. L. & N. Railroad v. Layton, 243 U. S. 617; Director-General v. Ronald, 265 Fed. 143.; Payne v. Connor, 274 Fed. 497; Erie Railroad v. Caldwell, 264 Fed. 947; Jones v. Payne, 233 Ill. 480; Chicago, Rock Island & Pacific v. Brown, 229 U. S. 317, 57 L. Ed. 1204. (3) Plaintiff's contributory negligence, if any, is not only no defense to a cause of action arising under Safety Appliance Act, but is not even to be taken into consideration in diminishing the damages. Sec. 3, 35 U. S. Stat. 65-66. (4) In actions under Employers' Liability Act contributory negligence and assumption of risk do not bar plaintiff's recovery where statute enacted for the safety of employees such as the Safety Appliance Act has been violated. Section 8660 (Act April 2, 1908, Chap. 149, sec. 4, U. S. Compiled Statutes); Union Pacific Railroad Co. v. Huxoll, 245 U. S. 535; Payne v. Connor, 274 Fed. 497; Erie Railroad Co. v. Schleenbaker, 257 Fed. 667; Erie Ry. Co. v. Purucher, 244 U. S. 320, 61 L. Ed. 1166; Baughan v. Ry. Co., 241 U. S. 237; Texas Ry. Co. v. Rigsby, 241 U. S. 33; Grand Trunk Western Ry. Co. v. Lindsay, 233 U. S. 42.

RAGLAND, P. J.—This was an action for personal injuries, the right of recovery being based upon the Federal Employers' Liability and Safety Appliance acts. There was a judgment for plaintiff in the trial court,

to reverse which defendant prosecutes this appeal. The only error assigned by appellant is the failure of the court to direct a verdict for the defendant. The facts necessary to an understanding of the questions involved, as gathered from plaintiff's evidence, may be outlined as follows:

The defendant owned and operated a small railroad located wholly within the State of Illinois. It consisted of nineteen miles of track running east and west from East St. Louis to Troy—its main line, and seven miles of track running north and south from Formosa to Leclair, known also as the Belt Railway. The latter line intersected the former at Troy Junction, and the two were connected by means of a Y. Commencing at a point a few feet north of the intersection and extending north along the east side of the Belt Line and paralleling it, there were two sidings; the one next to the main track was known as track No. 1, and the other as track No. 2. They were connected with the main track by switches and each was of sufficient length to hold thirty-five cars. These two sidings were called interchange tracks. The defendant and the Illinois Terminal were connecting carriers and each delivered on these tracks cars of freight, the carriage of which was to be continued or completed by the other. No switch engine was in use in the yards at Troy Junction, but when defendant's trains came in (they ran on no regular schedule) they frequently set cars on the exchange track and picked up others, necessitating switching movements. Defendant was engaged in both intrastate and interstate commerce, and its tracks, roadbed and other facilities were used indiscriminately in both.

Plaintiff was employed by defendant as a section man; his sole duty was to labor on defendant's tracks and roadbed. Under his contract of employement he was to work eight hours a day, from 7:30 in the morning until four o'clock in the afternoon, with an interval of thirty minutes, from 11:30 until noon, for lunch. In actual practice the lunch period for him and the men with

whom he worked was not determined by the stroke of the clock; they worked until the foreman called off for lunch and resumed again upon his call. The defendant did not furnish a place where its section men could eat their lunch. They could go where they chose and do what they chose during the lunch period, provided they were at hand to resume work at the call of the foreman. On June 13, 1921, in the forenoon, plaintiff pursuant to his employment was at work spreading and leveling cinders along the tracks of the Y at Troy Junction. He was one of a gang of eight men so engaged. At 11:45 the foreman told them to stop for lunch. The men, including the plaintiff, threw down their shovels and went for their lunch buckets which they had left on a motor car a short distance away. The day was hot and sunshiny. The only buildings of defendant at Troy Junction were tool houses and an inspector's shanty. After the men had procured their lunch buckets, two of them started toward a freight car standing on track No. 1 near the south end. The others followed and presently all of them, the foreman included, were alongside the freight car, or under it, eating their lunch. At the time there was a string of five cars coupled together at the end of track No. 1, and there was another string near the south end, whether coupled or not does not appear, the southernmost being the one under which the section men were eating their lunch. Between the two strings there was a space of four or five car-lengths. While the section men were still under or alongside the freight car just mentioned, a freight train came from the north, running backwards. It had two cars to be set in on one of the interchange tracks. When it reached the switches near the north ends of the side tracks it kicked the caboose and the cars between it and the two to be set out down the main line. The brakeman in charge of the switching operation then decided to set the two cars in on track No. 1. Seeing the five cars coupled together at the north end, he concluded to have the two cars backed in with sufficient force to couple by impact with the five

and then have the string of seven pushed a short distance down the track. He saw the section men at the south end, but he gave them no warning because he did not intend to disturb or move the cars at that end. He opened the couplers and signaled the engine to back up; the two cars to be coupled by this movement were on a straight and level track; and the couplers and drawbars were properly lined up for coupling. When the cars came together the impact made was just right—not too hard nor too light—to effect a coupling, if the automatic couplers properly functioned. But they did not; the coupling was not made; and the five cars started rolling, ran against and caused to move a distance of two or three car-lengths the string of cars at the south end, including the one under which the section men had eaten their lunch. Plaintiff was at the time in the act of getting out from under this car, but was caught by the movement and his legs crushed.

Plaintiff received the injuries just mentioned at approximately 12:35 P. M. Prior to that time the men had all finished eating their lunches; they had sat under the car and rested for a period; and the foreman had said, "It is time to go to work, come out boys." Immediately following the direction to come out and go to work the foreman shouted, "The Terminal is coming, get out." Plaintiff, however, had in response to the first order picked up his lunch pail and was crawling out from under the car on his hands and knees. He was the only one injured.

The petition contained eight different specifications of negligence, but the case was submitted to the jury upon only two: (1) negligence under the humanitarian rule and (2) failure to comply with the Safety Appliance Act. The jury was required to find for plaintiff as to both in order to return a verdict in his favor. The answer was a general denial coupled with pleas of contributory negligence and assumption of risk; it also set up the Workmen's Compensation Act of the State of Illinois as a complete bar to the action.

There are two principal questions in the case: First, was the plaintiff at the time of his injury employed in interstate commerce? Second, was he at the time within the class of persons for whose benefit the Safety Appliance Act was passed? Other questions are subsidiary to these.

The defendant was engaged in interstate commerce, and its roadbed and tracks were instrumentalities used by it in that commerce. 'There can be no question therefore but that plaintiff while spreading cinders, a work having for its purpose the repair, maintenance and upkeep of defendant's roadbed and tracks, was employed in interstate commerce. [Pedersen v. Railroad, 229 U. S. 146.] The character of the work just mentioned was the only kind plaintiff was employed to do, so that if he was engaged in the master's service at all at the time he was injured, he was then employed in interstate commerce. The only question then is whether at the time plaintiff received his injury there had been a temporary suspension of the relation of master and servant. There is no precise rule for determining when a temporary cessation from the work being done by the servant, and which he was employed to do, operates to bring about an intermission of the relation of master and servant. Each case must be ruled upon its own facts. In a general way it may be said, that when the servant voluntarily turns aside from the work of the master to pursue some errand of his own the relation is for the time being suspended; but when the cessation is incidental and for some natural or necessary purpose which fairly falls within the contemplation of the parties there is no intermission. [Elliott v. Payne, 293 Mo. 581, 595.] Without restating the facts it is clearly inferable from them that defendant intended that plaintiff and its other section men should eat their lunch on its premises close to the place where they were at the time at work, that they should stop work to eat when the foreman gave permission, and that they should resume work when he told them. All the circumstances considered the eating of lunch by plaintiff im-

mediately preceding his injury should be deemed to have been an incident of the work of surfacing defendant's tracks and roadbed with cinders, and in legal contemplation a part of it. [Thomas v. Railway, 108 Minn. 485; C. C. C. & St. L. Railroad Co. v. Martin, 13 Ind. App. 485; Phila. B. & W. Railroad Co. v. Smith, 250 U. S. 101; Erie Railroad Co. v. Winfield, 244 U. S. 170; Nor. Car. Railroad Co. v. Zachary, 232 U. S. 248; Baltimore & O. Railroad Co. v. Kast, 299 Fed. 419.] If the relation of master and servant was not suspended during the time he was eating lunch, it was not suspended at all, and consequently he was engaged in his employer's service at the time he received his injury.

As the defendant was operating a railroad engaged in interstate commerce it was required by the Safety Appliance Act to equip all of its cars used thereon "with couplers coupling automatically by impact." [Southern Railroad v. United States, 222 U. S. 20.] The duty imposed by the act did not end with the mere installation of such couplers, the defendant was bound to maintain them in an operative condition. "A 'failure of a coupler to work at any time sustains a charge of negligence.' " [Noel v. Railroad, 182 S. W. (Mo. App.) 787, and Federal cases cited.] The showing that in the switching movement in connection with which plaintiff received his injury the cars did not couple by impact was sufficient therefore to take the case to the jury on the question of whether defendant had failed to discharge the duty imposed upon it by the statute. Appellant apparently concedes these propositions; its contention is that plaintiff was not within the class of employees that the Safety Appliance Act was designed to protect; that it protects only the employee who is engaged in coupling or uncoupling cars. Such seems to have been the construction placed upon the act in St. Louis Railroad v. Conarty, 238 U. S. 242, but under the later decisions of the Supreme Court it has been given a much wider application. It is now held that the carrier is liable to the employee in damages whenever the failure to obey the safety ap-

pliance laws is the proximate cause of injury to him when engaged in the discharge of his duty, regardless of the position he may be in or the work he may be doing at the moment when he is injured. [Louisville Railroad v. Layton, 243 U. S. 617; Minneapolis Railroad v. Gotchall, 244 U. S. 66; Lang v. Railroad, 255 U. S. 455; Davis v. Wolfe, 44 Sup. Ct. Rep. 64.] From the evidence it appears that if the cars had coupled by impact as intended by the employee who directed the switching movement. the string of five cars would not have run against the car under which plaintiff had eaten his lunch and it would not have been moved. Whether the failure of the coupler to couple by impact was the proximate cause of plaintiff's injury was clearly for the jury.

"No . . . employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee. . . . Such employee shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." [Secs. 8659 and 8660, U. S. Comp. Stat.] The defenses of contributory negligence and assumption of risk are therefore not available to defendant in this action.

The liabilities and obligations of interstate railroad carriers to make compensation for personal injuries suffered by their employees while engaged in interstate commerce are regulated both inclusively and exclusively by the Federal Employers' Liability Act; the Illinois Workmen's Compensation Act was therefore without influence in determining the defendant's liability or the plaintiff's remedy with respect to the injury sued for. [New York Railroad v. Winfield, 244 U. S. 147.]

The judgment of the trial court is affirmed. All concur, except *Atwood, J.,* not sitting.