## ATCHISON, T. & S. F. RY. CO. v. TIEFEL.

Circuit Court of Appeals, Ninth Circuit.
November 5, 1928.

No. 5574.

978

Robert Brennan, M. W. Reed, Leo E. Sievert, and E. T. Lucey, all of Los Angeles, Cal., for appellant.

Halverson & Halverson and George Halverson, all of Los Angeles, Cal., for appellee.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. This is an appeal from a judgment awarding to the appellee damages for a personal injury suffered by her in the wreck of one of appellant's passenger trains, upon which she was riding, between Los Angeles and San Diego, Cal. She was being carried upon a free pass, which contained a stipulation, signed by her, that in accepting it she agreed "to assume all risks of accident and damage to person or baggage in any circumstances, whether caused by the negligence of agents or otherwise." By section 2175 of the California Civil Code it is provided that "a common carrier cannot be exonerated, by any agreement made in anticipation thereof, from liability for the gross negligence, fraud, or willful wrong of himself or his servants." By both sides the case was tried, and the court submitted it to the jury, on the theory that, upon proof that the accident resulted from gross negligence, the plaintiff was, and without such showing she was not, entitled to recover. Northern Pac. R. Co. v. Adams, 192 U. S. 440, 24 S. Ct. 408, 48 L. Ed. 513; Walther v. Southern P. Co., 159 Cal. 769, 116 P. 51, 37 L. R. A. (N. S.) 235.

At the close of the evidence, defendant duly challenged its sufficiency, and the denial of its motion for a nonsuit or directed verdict is the only serious question urged on appeal. True, it is suggested that, because plaintiff did not, in her complaint, characterize the negligent acts which she pleaded as "gross" negligence, there is a variance; but the complaint was in no way assailed, and there was no demand for greater certainty by bill of particulars or otherwise. That being true, we think it was not error to submit to the jury the question whether, under all the circumstances in evidence, the acts alleged to have been negligently done constituted gross negligence.

As set out in the complaint, the gist of the charge is that appellant so negligently and carelessly and at such a high and dangerous rate of speed—alleged to have been in excess of 60 miles an hour—operated the train that it left the track. Plaintiff herself testified as to the speed, and in the light of her somewhat unusual experience, as disclosed by the record, she was undoubtedly competent, the weight of her evidence being for the jury.

There is testimony tending to show that the accident occurred in the nighttime; that at the point of the wreck the track is on a sharp curve—"almost a semi-horseshoe curve"; that the regular or usual speed at the curve was about 35 miles an hour; that there was a general order limiting trains to that speed; that upon leaving Sorrento, a short distance from the curve, the train began to go so fast it rocked; that it rocked for some time, and as it entered the curve it was rocking violently; that just before it left the track it was going at a speed of 60 miles an hour; that the engine left the rails and turned over, most of the cars were piled up, and some were badly smashed. The only witness called by defendant to testify as to the operation of the train and the circumstances of the wreck was the conductor. In some respects, particularly as to the speed of the train, his testimony differs materially from that of the plaintiff and of her daughter, who was traveling with her.

Appellee makes no contention that there is any rule of law limiting the maximum speed of railroad trains; any speed consistent with safety is lawful. Her position is that under the circumstances a speed of 60 miles an hour around a curve admittedly so sharp that there was against it a standing order restricting trains to 35 miles an hour was not only imprudent but reckless and grossly negligent. We cannot say that a finding of gross negligence was unwarranted, if the jury believed that under such conditions the train was in fact going at the rate of 60 miles an hour and rocked violently for some time before it left the rails.

Affirmed.